Ella Fleming, Appellee, v. Chicago City Railway Company, Appellant.

## Gen. No. 15,922.

1. VERDICTS—*when not disturbed.* A verdict will not be set aside on review as against the weight of the evidence unless clearly and manifestly so.

2. TRIAL—*when conduct of counsel will not reverse.* While references to the plaintiff as a "widow" getting "her nickels by pulling a thread," perhaps, are improper, yet they will not reverse where they did not inform the jury of the existence of facts not reasonably deducible by them from the record as made.

3. EVIDENCE—*when proof of value of services sufficient.* The value of medical services is sufficiently established if the physician states that there is no usual and customary fee for such services as he rendered but that the charges made by him were fair and reasonable.

4. INSTRUCTIONS—*when refusal of correct will not reverse.* The refusal of a correct instruction will not reverse if its contents are substantially contained in other instructions given.

5. INSTRUCTIONS—*abstract in form.* It is not error to refuse a correct instruction if abstract in form.

6. INSTRUCTIONS—*when refusal, presenting defendant's theory of case, will not reverse.* Notwithstanding an instruction was erroneously refused which presented the defendant's theory of the case, such refusal will not reverse where the jury were sufficiently impressed by the given instructions with the issues which they were called upon to determine.

7. INSTRUCTIONS—*when modification cannot be complained of.* A modification though erroneous will not reverse if the instruction to

which the modification was made might have been refused as a whole.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909.    Affirmed. Opinion filed October 4, 1911.

GEORGE W. MILLER, for appellant.

SAMUEL J. HOWE, for appellee; CAMERON BARBER and WILBUR C. BACON, of counsel.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

In this action in case to recover damages for personal injuries the declaration contains three counts. The first count alleges that plaintiff was a passenger on one of defendant's cars operating on Indiana avenue; that before said car reached Forty-second street she gave the conductor a signal to stop said car at the intersection of said street and Indiana avenue so that she might alight there; that after giving said signal she went upon the rear platform of said car and waited for the same to stop so she might alight therefrom in safety; that said conductor permitted said car to be run without stopping until it reached the north side of Forty-second street, when it came almost to a standstill; that while plaintiff, in the exercise of due care, was then and there standing on said platform, said car was suddenly and violently jerked and started forward, whereby plaintiff was thrown from said platform to the ground, etc.    The second count is substantially like the first.    The third count further alleges that before the plaintiff had been given a reasonable time to alight the said car was suddenly and violently jerked and started forward, etc.    A trial by jury resulted in a verdict and judgment against the defendant for $1,500 and this appeal followed.

Fleming v. Chicago City Ry. Co., 163 Ill. App. 185.

It is first urged by appellant that the verdict is against the manifest weight of the evidence.

Appellee testified that shortly after 6 o'clock on the evening of January 9, 1908, she boarded a south bound car operated by appellant on Indiana avenue at Thirty-first street, intending to alight at Forty-second street; that she sat facing west on the end seat nearest the rear door of the car; that when the car passed Forty-first street, she said to the conductor, who was standing inside of the car near her, "Forty-second, please;" that the conductor made no response; that when the car reached Forty-second street, it was going very fast, and the conductor did not call the street until the car had gone a quarter of a block; that upon his calling the street, she said, "Well, why didn't you let me off at Forty-second," and he said, "Did you ask me?" to which she replied, "I certainly did," whereupon he said, "I never heard you;" that the car was then coming to a standstill, and she stood up, took hold of the door and said, "It does not make any difference, it just gives me a block further to walk;" that the conductor was then putting his book, in which he had been making out his report, in his pocket; that she thought the car was just moving and she pulled the door back and stepped out onto the platform, the conductor following her; that she stepped to the rear end of the platform, between the upright iron bar and the end of the platform, and took hold of the bar with her left hand; that she had some books in her right hand; that she so stood on the platform waiting for the car to stop, when it gave a sudden jerk which threw her back and forwards and she fell on her head on the street; that when she went out on the platform there was no one there other than the conductor, but that a lady came out after she did and stood on the platform next to the car. On cross examination appellee testified she did not stand on the extreme edge of the platform, but about a foot back; that the car moved faster after

she came out on the platform than it did when she left
her seat; that she did not step down on the step at
any time or make any effort to do so; that she did not
stand on the platform more than two minutes before
she was thrown off.

George D. Mason, a witness called on behalf of ap-
pellee, testified that as he was going to his place of
business at the corner of Indiana avenue and Forty-
third street, he heard some one "holler" and saw ap-
pellee fall off the car, which was then immediately op-
posite him; that when he first saw the car it was stand-
ing still, waiting for a car, a half a car length ahead
of it, to pull out, and that it then started up; that he
could not say whether the car started with a jerk or
not—did not know; that he heard appellee cry after
the car started, and as he remembered it, the starting
of the car and the falling of appellee were at the same
time; that as far as he saw, the car started in the or-
dinary way.

Anna Anderson, a witness for plaintiff, testified,
when she went on the platform, at or near Forty-third
street, appellee and the conductor were there; that the
car was slackening up to stop; that the car was going
when appellee fell off; that the car started suddenly
with a jerky motion after she went out on the plat-
form, and she steadied herself by taking hold of the
iron bar; that she started back to the door after the
car jerked, and at that time appellee was still on the
platform; that she stood with her back to the door
looking east until the car stopped, when she got off,
and at that time appellee was back in the street; that
she did not see appellee when she fell off the car.

Oliver Jackson, a witness for appellee, testified
that he was employed by the witness, Mason; that he
saw appellee standing on the platform holding the
iron; that it appeared to him she was just leaving the
door of the car; that just the instant the car gave a
sudden jerk and knocked appellee on her face forward

Fleming v. Chicago City Ry. Co., 163 Ill. App. 185.

on the ground; that she was on the platform of the car; that the car was standing still when he first noticed it; and was just behind a car which started south immediately before it started with a jerk; that there was another car about an arm's length behind the car in question; that the car ran about two feet after appellee fell off.

John C. Hall, a witness for appellant, testified that he was a passenger standing on the rear platform of the car near the door when appellee fell off; that the first he noticed, he saw the skirts flip off the car; that the car was then going at a pretty good rate—the usual rate—and had not slowed down or stopped before that; that after appellee fell off the car ran forty or fifty feet; that he did not notice any jerk or lurch of the car when appellee fell off or before that.

W. Clay Davis, a witness for appellee, testified that he was a passenger on the car, sitting directly opposite appellee; that he saw her leave her seat and go on the platform and step off or fall off and lay on the ground; that the car was going at a pretty good speed, and there was no sudden jerk or lurch in its movement just before or at the time appellee fell off; that there was no one on the platform other than appellee when she fell off.

M. J. Kowalski testified that he was the motor-man on the car; that he ran full speed—between ten and twelve miles an hour—from Forty-third street to the middle of the block, where he threw off the current; that he put it on again to the fifth notch, and was going about six miles an hour when he got three bells to stop quick, and then ran about fifty feet before the car stopped.

Mrs. W. C. Davis, a passenger, testified that she sat with her husband directly opposite appellee; that all of a sudden appellee jumped up quickly and walked onto the platform and walked deliberately off the car

while it was going in full motion; that the conductor was then inside the car.

Coakley, who was the conductor on the car, testified he had no recollection of having had any conversation with appellee; that he saw her when she went out of the car onto the platform; thàt he thought he was on platform and didn't think there was any one else on the platform after she came out and before she fell; that as the car was slowing down for Forty-third street she stepped from the platform to the steps and from the step to the ground in the proper way if the car was stationary, but was thrown to the ground; that he was not inside the car when the accident happened; that appellee did not come out with any noticeable haste, as though she was in a hurry or excited; that the car was running about four or four and a half miles an hour when appellee deliberately stepped onto the step and then took another step down on the ground.

It will be observed that the evidence bearing upon the material issues of fact in the case is hopelessly and irreconcilably conflicting. There is also much conflict in the evidence relating to the proximity of the car in question to Forty-third street, the number of cars then on the track in the immediate locality, and the order and method of movement of said cars. These matters we deem of minor importance, although counsel for appellant devotes considerable space to their discussion.

All of the witnesses who claim to have observed appellee when she fell, except Coakley, the conductor, and Mrs. Davis, testified that she fell directly from the platform to the ground. Mrs. Davis testified that appellee deliberately jumped from the platform. In the absence of evidence to the contrary it must be presumed appellee was of sound mind. She testified that she used the cars habitually in going to and from her work. It is claimed by appellant that she was injured while attempting to alight from the car in the usual

Fleming v. Chicago City Ry. Co., 163 Ill. App. 185.

manner, but three of appellant's own witnesses posi-
tively disprove such claim. A careful consideration
of the evidence impels us to the conclusion that the
verdict is not against the manifest weight of the evi-
dence.

In the course of his opening statement to the jury
counsel for appellee used the following language:
"The plaintiff in this case, gentlemen of the jury, we
expect to show you is a widow who has been engaged
for many years—;" and in his closing argument coun-
sel said: "Now, gentlemen of the jury, a few words
as to the injuries and the question of damages: Brother
Miller says that there was nothing except a little abra-
sion on the forehead, and he says why didn't she see—
why didn't she bring in the doctors? Because she gets
her nickels by pulling a thread perhaps." Counsel
for appellant in each instance objected to the language
quoted and the objections were sustained by the court.
It is nevertheless urged that the reference to appellee
as being a "widow," who, perhaps, "gets her nickels
by pulling a thread," "drew a picture in the minds of
the jury of a poor widow woman who was obliged to
eke out her living" by "pulling a thread," which was
calculated to and did arouse their sympathies to the
prejudice of appellant.

The record discloses that repeatedly during the pro-
gress of the trial appellee was referred to as "Mrs.
Fleming" and that in answer to cross-interrogatories
propounded to her she testified that she was fifty
years of age and had been following the occupation of
a seamstress for twenty-five years; did sewing and fine
needle work, working long hours of the day, and at
night for over a period of fifteen years. If she had
had a husband he would doubtless have been called as
a witness in her behalf to testify, at least, to the ex-
tent of her injuries. That she had been for many
years and was then obliged to work for a living was
in evidence brought out by appellant. We are not in-

clined to believe the jury were so obtuse that they failed to draw the reasonable inference from the facts and circumstances in evidence, without objection, that appellee was a widow, who was obliged to work long hours to eke out a living. While the language in question was improperly employed by counsel for appellee with a view to arousing the sympathies of the jury in her behalf, it did not inform the jury of the existence of facts not reasonably deducible by them from the record as made. The action of the court in sustaining the objections interposed by counsel for appellant to the language used, and in instructing the jury that sympathy for appellee should not influence them in determining whether or not appellant was liable, we think fully neutralized the harmful effect, if any, of such language.

It is insisted that in the absence of proof that a charge by Dr. Almes of $34 was the usual and customary charge for professional services rendered by him to appellee, evidence of such charge was improperly admitted. The doctor testified that he did not think there was a usual and customary fee for services of physicians and surgeons in Chicago; that he made a charge for his services to appellee, which charge was fair and reasonable for the services performed; that he charged $10 for the first dressing and $2 a visit for subsequent visits, making a total of $34. Proof is usually available in such cases to establish a usual and customary charge, but where, as here, it appeared there was no usual and customary charge for such services, it was sufficient for appellee to show that the medical and surgical services rendered were necessary and that the charge for such services was fair and reasonable. Amann v. Chicago Trac. Co., 243 Ill. 263. The question sought to be raised is not of sufficient significance in this case to merit either the extended discussion accorded it by counsel, or a reference to it on review.

Complaint is next made of the refusal of the court to give to the jury several instructions tendered by appellant. The eighth instruction does not designate the specific negligence alleged in the declaration, as counsel seem to assume, and was sufficiently covered by the fourteenth given instruction. The ninth instruction was covered by the twenty-third and twenty-fourth instructions given to the jury. The eleventh instruction had no place in the case. There was no pretense either under the pleadings, or upon the trial, that appellee sought a recovery upon the ground that she was carried beyond Forty-second street. The twelfth instruction was abstract in form and was not improperly refused. The thirteenth instruction tendered by appellant was erroneously refused. It embodied appellant's theory of the case and should have been given to the jury. We are not disposed to hold, however, that the refusal to give said instruction requires a reversal of the judgment. While there was evidence in the case tending to show that appellee was injured while attempting to alight from the car, it was sufficiently impressed upon the jury by the given instructions that the negligence charged did not relate to a failure on the part of appellant to afford appellee reasonable time and opportunity to alight from the car. If, however, the instruction was intended to refer to the question of contributory negligence, it was properly refused as invading the province of the jury.

There is no force in appellant's objection to the fourth instruction given at the instance of appellee. There is no reference in the instruction to mental suffering or humiliation as an element of damage. What we have heretofore said relative to the competency of the evidence of Dr. Almes with reference to his charge for medical and surgical services, is a sufficient answer to another objection urged to the instruction. The jury were sufficiently limited by the instruction to the assessment of damages for such pain and suffering,

the direct result of the accident, as the evidence showed she had endured.

The fifth instruction given at the request of appellee is in substance like the fourth instruction approved in Keokuk Bridge Co. v. Wetzel, 228 Ill. 253.

Appellant was not harmed in the court's modification of its seventeenth instruction by striking out the paragraph wherein the jury were informed they should find appellant not guilty if the evidence was evenly balanced as between the contention of the parties on the material issues. The last paragraph of the instruction as given was equivalent to the one stricken out. Moreover, the instruction might have been properly refused, because taken as a whole it submitted to the jury a question of law by permitting the jury to determine the material allegations of the declaration.

The damages are not excessive.

There is no substantial error in the record and the judgment is affirmed.

*Affirmed.*