**Estella Klein, Appellee, v. National Protective Legion, Appellant.**

1. FRATERNAL BENEFIT SOCIETIES—*fraud in application.* In an action on a life insurance policy by the beneficiary, involving questions of fact, as to whether the insured, at the time of making the application had tuberculosis and fraudulently denied it, and whether she died from such disease within a year thereafter, verdict and judgment for plaintiff, *held*, not manifestly against the weight of the evidence.

2. FRATERNAL BENEFIT SOCIETIES—*fraud in application.* A benefit certificate was conditioned on the insured having complied in every particular with the laws of the order and not having obtained

membership by fraud or misrepresentations as to age, family history, physical condition or occupation, the application being made a part of the certificate. *Held*, that where an applicant answers "no" to a question by the medical examiner, as to her being afflicted with any disease, although knowing that she had tuberculosis, such untruthful representation is sufficient to defeat recovery by the beneficiary.

3. INSURANCE—*"warranty" and "representations" of applicant.* Although an insurance certificate and an application, which is made part thereof, contain no language constituting a "warranty" by the applicant, as to the condition of his health, fraudulent statements made in such application, in order to obtain the certificate, are classed as "representations," which also bar recovery.

4. FRATERNAL BENEFIT SOCIETIES—*evidence of cause of death.* Under a by-law of an insurance society, ten per cent. of the benefit was payable in full satisfaction in the event of any member dying within one year after examination, from tuberculosis. The physician attending a member in her last illness reported, certified and testified to his opinion, that she died from "galloping consumption." Another physician testified that he had treated her previously and that he thought she had tuberculosis at that time, that she knew of her condition. Her sputum was shown to have contained tuberculosis bacilli. A nurse who had occupied the same room as deceased and attended her night and day during her last illness stated she did not cough and that her health was broken down from childbirth. There was other evidence of prior good health. *Held*, sufficient to support a finding that the member did not die of consumption.

5. EVIDENCE—*weight of opinion.* The fact that a report to an insurance company and a certificate filed with the bureau of vital statistics, which are introduced in evidence, were signed by a physician, attending insured, and were to the effect that in his opinion insured died of galloping consumption, does not increase the weight of his testimony, in which he repeats such opinion, where he testifies to no facts as to the symptoms, appearance or condition on which he bases such opinion, the value of an opinion resting on the reasonableness of conclusions drawn from facts.

Appeal from the City Court of East St. Louis; the Hon. W. M. VANDEVENTER, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 10, 1913. Rehearing denied May 29, 1913.

DAN McGLYNN, for appellant.

WILLIAM A. KANE and JAMES G. McHALE, for appellee.

Mr. Justice Thompson delivered the opinion of the court.

Appellee, Estella Klein, brought this suit against The National Protective Legion, an insurance company, to recover $2,000 which she claims is due her as beneficiary in a policy of life insurance taken out on the application made by her sister, Minnie Virginia Edgell, on the 13th day of November, 1909.

There are two questions of fact presented by the record in this case. These questions were presented at the trial of the case below and were found in favor of the appellee by the jury, and a verdict for $2,000 (being the amount named in the policy) was rendered and a judgment entered by the court upon the verdict. These questions are first; did Minnie Virginia Edgell, have tuberculosis or consumption at the time of her making the application for membership in appellant society and did she know the same and make fraudulent and untruthful answers in her application for insurance; second, did Minnie Virginia Edgell die from tuberculosis or consumption within one year after taking out insurance with said company? The benefit certificate issued to the insured was designated as class A, form E, term certificate. One of its provisions contains the following: "The National Protective Legion does hereby promise and agree to pay within ninety (90) days after the receipt of satisfactory proofs of death of said insured member at the home office of the order at Waverly, New York, and upon surrender of this policy the sum of $2,000 to Estella May Klein, bearing the relationship of sister, provided always that the insured shall have complied in every particular with the laws of the order and has not obtained membership by fraud or misrepresentation as to age, family history, physical condition or occupation when admitted to membership by application, the latter hereby being made a part of this certificate." It is contended by appellant that the insured know-

ingly and fraudulently misrepresented her physical condition at the time she signed the application.

At the time of making application for membership numerous questions were propounded to the insured by the medical examiner, one of which was, "Are you now subject to or afflicted by any disease, malformation or weakness or have you had any severe disease except the usual diseases of childhood, other than those stated in the former answers or have you any material defect of eyesight or hearing? If so state the date and particulars of the same fully." To which question the said Minnie Virginia Edgell made answer "No." The foregoing answer was a representation by the insured as to her physical condition. If at the time her answer was given she knew that she was afflicted with tuberculosis or consumption and gave an untruthful answer to the question for the purpose of obtaining a certificate of insurance, then under the well known rules of law such contract would be sufficient to defeat recovery by the beneficiary named in the certificate.

There are two kinds of defenses which may be urged to defeat a recovery on policies of insurance; one is because of false and fraudulent representations which are made by the applicant to induce the company to issue the certificate; the other is where the applicant warrants the condition of health in the application and the application is made a part of the policy. This case must be considered under the first of these two classes. There is no language employed in the application or in the certificate issued which could be held to constitute a warranty.

The other question presented by this record, namely, whether the insured died from tuberculosis or consumption within one year after the medical examination, arises under a provision in a by-law which was published in a book of the society at the home office of the company in Waverly, New York, and is as follows: "Section 120. In event of the death of any

member holding class A certificates within one year after medical examination who may die from tuberculosis, cancer, diabetis, or Bright's disease, there shall be due and payable in full satisfaction of benefit premiums ten (10) per cent. of the certificate.''

Appellant contends that the verdict is against the weight of the evidence and refers to the evidence of Dr. Herrich, who attended the insured during her last illness. Dr. Herrich, in the certificate of the cause of her death, gave it as his opinion, she died of what he termed ''galloping consumption.'' On the trial his testimony however was not so positive that such was the cause of her death. This witness is the doctor, who reported to the appellant company, that the cause of death was consumption and who also signed the certificate of the cause of death, which was filed with the Bureau of Vital Statistics. The fact that the report and certificate offered in evidence were made and signed by Dr. Herrich, does not increase the weight of his testimony in the case. It is simply a repetition of his opinion, and the value of an opinion rests on the reasonableness of conclusions drawn from facts. Dr. Herrich testified to no facts as to the symptoms, appearance or condition on which he based his opinion.

The testimony of Dr. Robinson, more nearly supports appellant's contentions as to the existence of tuberculosis than that of any other witness. He testified that he saw the deceased professionally, some time in October, 1909, and that he thought she had tuberculosis at that time. That he obtained some of her sputum. It was brought to him in a bottle, by her or her sister, and he sent the bottle to Dr. Gradwohl, for examination. The witness stated that he did not remember of telling deceased that she had tuberculosis, but that she knew of her condition. The witness did not state, however, how he knew that she had knowledge of her condition.

Dr. Gradwohl testified he examined a bottle of

sputum sent him by Dr. Robinson, that the sputum he examined contained tuberculosis baccilli, but that he did not know whose sputum he examined.

A paper purporting to be a signed statement made by the plaintiff, Mrs. Klein, was offered in evidence by the defendant. Henry S. Griffin, a detective, who was acting for defendant, procured the signature of Mrs. Klein to the statement which he prepared, and she signed it at her home. The paper so introduced in evidence stated the cause of the death of the deceased to be consumption.

Appellee admits she signed a statement thinking it was for the purpose of obtaining payment of the insurance but she denies that the statement when signed by her contained the words, "She died of consumption." All of the statement was in the hand writing of the detective and the words in dispute were at the end of the statement.

On the part of the appellee the evidence showed that deceased was in excellent health prior to the birth of her child in August, 1909.

Dr. Benson who had known her from childhood testified she was a strong, healthy woman, that she was "A little chubby heavy set, sawed off German girl," the picture of health and the most unlikely person to take consumption. That he treated her for pneumonia in March or April, 1908, from which she recovered, "the pneumonia terminated suddenly favorably and there were no indications of consumption at that time." That he did not see her afterwards.

Dr. Vannahme, the medical examiner for appellant who examined the deceased when she applied for insurance, reported to appellant that the risk was "first class" there were no indications of disease of the respiratory organs.

Appellee, sister of deceased, testified that the deceased was strong and healthy until after her child was born and that she had trouble with her husband, who had deserted her. That she did not sign a paper

furnished by the company's detective in which she stated the cause of her sister's death to be consumption. That the word consumption was not written on the paper at the time she signed it. That she did not think that her sister had consumption. She never told anyone that her sister had consumption.

The trained nurse who waited on deceased during her last illness testified as to the cause of death, ''I think it was more worry and heart broken,'' and ''her health was broken down from child birth.'' ''The doctor told me he prescribed the medicine for her weakness.'' ''She did not cough while I attended her, I was there day and night and slept with her, occupied the same room.''

The foregoing statement of facts constitutes substantially all the evidence submitted on the trial and the jury found for the plaintiff, on both questions; that is, that the deceased did not fraudulently misrepresent her physical condition and that she did not die of consumption.

The judge who tried the case approved this verdict by rendering judgment on it and he was in a better position to pass on the truth of the testimony of the several witnesses when there was a decided conflict of evidence, than a court of review.

This court should affirm that judgment unless it appears from the whole record that the evidence is not sufficient to support the verdict and injustice would result therefrom. Fleming v. Chicago City Ry. Co., 163 Ill. App. 185; Hilliard v. Chicago City Ry. Co., 163 Ill. App. 282; Garrett v. Connor, 164 Ill. App. 43.

From a consideration of this record we cannot say the verdict and judgment in this case was manifestly against the weight of the evidence, and the judgment will therefore be affirmed.

*Affirmed.*