No. 3293

First Circuit

———

PRINGLE v. COOKSTON, ET AL.

———

(June 28, 1928. Opinion and Decree.)

———

(*Syllabus by the Court*)

1.  **Louisiana Digest—Acts—Par. 20, 23, 31.**
In the interpretation of a deed, the whole intent is to be taken from the whole description, particular as well as general.

> Bender vs. Chew, 129 La. 849, 56 So. 1023.
> McKenzie vs. Dee, 10 Orleans App. 207.

Appeal from the Eighth Judicial District Court, Parish of LaSalle. Hon. F. E. Jones, Judge.

Action by W. C. Pringle against W. C. Cookston et al.

There was judgment for defendants and plaintiff appealed.

Judgment affirmed.

Lamar Polk, of Alexandria, attorney for plaintiff, appellant.

Eugene Beck, of Alexandria, attorney for defendants, appellees.

### STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff, W. C. Pringle, sued defendant W. C. Cookston, and defendant First National Bank of Winnfield, Louisiana, to recover the sum of $500.00 deposited in escrow in said bank under

an agreement in writing, dated March 6, 1926, between himself, Cookston, and one J. C. Davis, in words and figures as follows:

"Know all men by these presents, that the following contract and agreement is made and entered into this date, by and between J. C. Davis, hereinafter designated as party of the first part, W. C. Pringle, hereinafter designated as party of the second part, both residents of Rapides parish, Louisiana, and W. C. Cookston, a resident of Winn parish, Louisiana, and hereinafter designated as party of the third part, witnesseth: That the party of the first part agrees to sell, and does by this act bargain, sell, convey and deliver unto the party of the second part, subject to the terms and conditions hereinafter stated, an undivided one-half interest in fee simple, of all the lands recovered in the hereinafter described property, situated in the parish of LaSalle, state of · Louisiana, to wit: SE¼ of SE¼ Sec. 27, NE¼ of NW¼ and W½ of NW¼ Sec. 25, and lots 1 and 7 in Section 23, Twp. 10 N. Range 1 East, and 80 lots and parcels of land in Sections 25 and 26, in Twp. 10 in town of Tullos; all in LaSalle parish, Louisiana.

"That for and in consideration of the hereinabove contract and agreement, the party of the second part has this day deposited in the First National Bank of Winnfield, Louisiana, a check for five hundred dollars, payable to the order of the party of the third part, for certain information revealed as to the discovery of unconveyed property which belongs to party of the first part. It being agreed that the unconveyed part of said property is not less than ½ acre, and party of the third part is to be paid at the rate of six hundred twenty dollars per acre.

"It is further agreed and understood by and between all parties hereto, that in the event said ½ acre of land is not recovered as belonging to the said J. C. Davis, then the five hundred dollars held in escrow at the First National Bank of Winnfield, La., shall be returned to the party of the second part, the parties hereto shall be then placed in the same condition as if this contract and agreement had never been made. But in the event said acreage is found, the said escrow agent shall deliver to the party of the third part the check for five hundred dollars, notwithstanding any other stipulation herein made."

He further alleges that the information given to Davis and him by Cookston was to the effect that the father of Davis, Calvin Davis, deceased, had acquired from one A. S. Norrid during the year 1901 a certain tract of land in the W½ of the NW¼ of Section 25 Township 10 North Range 1 East, in LaSalle Parish, Louisiana, and that in the subsequent sale of this property to one Tom Russell by the heirs of the deceased Calvin Davis all of the property so acquired by Calvin Davis was not included and that a portion of the property still belonged to the · heirs of Calvin Davis.

That acting upon the information imparted to them by Cookston pursuant to the agreement he and J. C. Davis made an investigation of the matter and resorted to litigation in an effort to recover the property and that the sole result of their efforts was the recovery of a small strip of ground in the W½ of the NW¼ of Section 25 Township 10 North Range 1 East, thirty feet by three hundred eighteen feet and having an area of much less than half an acre.

The defendant First National Bank of Winnfield answered that it was merely a stakeholder and asked to be protected as such.

Defendant Cookston answered that plaintiff, William C. Pringle, and James C. Davis own and have a legal, valid and merchantable title to eight-tenths of an acre of land, more or less, minutely described as beginning 30 feet south of the southwest corner of the land belonging to W. T. Bass in the W½ of the NW¼ of Section 25 Township 10 North Range 1 East in LaSalle Parish, Louisiana, which

point of beginning is on the Missouri Pacific Railroad Company's right-of-way, run thence north 30 feet to the said corner of Bass' land; thence east on the south boundary line of Bass' land 318 feet, thence south, sixteen degrees and forty-four minutes west, 184 feet, thence in a northwesterly direction to the point of beginning; as shown by plat of survey made by Charles D. Evans, surveyor, filed for record on February 26, 1926, and recorded in Book L at page 592 of the records of the Parish of LaSalle, Louisiana, and that said tract of land was recovered by plaintiff and James C. Davis from information revealed to them by him pursuant to the agreement.

And he further alleged that in the litigation referred to in plaintiff's petition no attempt was made to recover all of the above described property and that through error, negligence or fraud instead of suing for the land above described only a tract of thirty feet by three hundred eighteen feet was sued for.

And he prayed that plaintiff's demands be rejected and that he have judgment against plaintiff decreeing him to be the owner of and entitled to the $500.00 deposited in escrow in the First National Bank of Winnfield and directing the bank to pay over the same to him.

On these issues the case was tried and there was judgment rejecting plaintiff's demands and decreeing defendant Cookston to be the owner and entitled to the $500.00 in the possession of the bank and ordering the bank to pay it to him, and fixing the fee of the expert surveyor who testified in the suit at $15.00 and taxing plaintiff with all costs.

From this judgment the plaintiff appealed.

## OPINION

The map made by Charles D. Evans, surveyor, dated February 26, 1926, was filed in evidence and is relied on and referred to by both Pringle and Cookston as correctly showing the locus in quo.

Calvin Davis was the owner of a tract of land indicated on the map by the angles A, B, F, G, K. He acquired the property in two separate purchases from A. S. Norrid.

On October 25, 1921, Norrid sold him a tract described as follows:

"In the west half of northwest quarter section twenty-five township ten range one east and described as follows: commencing at the edge of right of way of the H. C. A. and N. Ry. at a point where land owned by B. F. Pendarvis joins said right of way, and running south 250 feet, or about that distance, to pasture fence; thence east 318 feet, along said line of fence; thence north, back to the line of Pendarvis, about 250 feet; thence west, along said line, back to said right of way, about 318 feet; making about two acres, more or less."

This purchase is indicated on the plat referred to by the angles A, L, E, B.

On December 21, 1901, Norrid sold him a tract described as follows:

"the following described lots or parcels of land * * * being situated in west half of the northwest quarter section twenty-five township ten north range one east * * * also one lot of land adjoining the above described lot on the north, running north from said lots along the right of way of the Houston, Central and North Railroad three hundred and thirty-six yards, thence east one hundred and six yards, thence south three hundred and thirty-six yards back to said lots, thence west one hundred and six yards to the right of way of said road * * * "

This purchase is indicated on the plat referred to by the angles K, L, E, F, G.

On April 9, 1914, the heirs of Calvin Davis sold to Tom Russell a tract of land described as follows:

"West half of the northwest quarter of section twenty-five township ten north range one east, * * * also one lot of land adjoining the above described lot on the north, running north from said lot along the right of way of the Houston, Central and North railroad three hundred and thirty-six yards, thence east one hundred and six yards, thence south three hundred and thirty-six yards, back to the said lot; thence west one hundred and six yards to the right of way of said road * * * and being the same land purchased by Dr. Calvin from A. S. Norris on the 12th day of December, A. D. 1901, recorded in deed book No. 7 page 572 on January 2nd, 1904, * * * "

No other sale was made by either Calvin Davis or his heirs of the land acquired by him in his two purchases from Norrid and unless the sale from the heirs to Russell conveyed all the land so acquired by Calvin Davis his heirs were the owners at the time of the execution of the contract herein sued on, of whatever of the land so acquired by Calvin Davis was not sold by them to Russell.

Pringle contends that the sale did convey to Russell all the land acquired by Davis from Norrid, with the exception of two hundred twenty-five one-thousandths (225/1000) of an acre recovered in the lawsuit mentioned in his petition and indicated on the map by the angles A, B, C, M.

His theory is that in construing that sale courses must control distances in the absence of natural monuments inconsistent with the courses. He points out that the starting point, K, is a natural monument, land not belonging to the vendors, and that the course "running north from said lot" would be construed to mean "northeasterly" even if there were not added, after the "running north" the modifying description "along the right of way of the Houston, Central and North railroad" which runs northeasterly and not north; that measuring three hundred thirty-six feet northeasterly along the eastern boundary of that right of way, the distance called for by the sale, the point M on the plat is reached, or the southern boundary of the 225/1000 acre above mentioned; that the next course and distance in the sale, "thence east one hundred and six yards," must be construed to mean "due east," or the line from M to C, which distance though not exactly one hundred six yards is approximately that, 316.96 feet; and that the next course and distance in the sale, "thence south three hundred and thirty-six yards" (counsel's brief says south*east* but the sale says *south*) means parallel to the western boundary or the right of way to point F on the plat, another natural monument. The distance from point C to point F, counsel says, is more than three hundred thirty-six yards, but that assuming point C to be the correct northeastern boundary, the distance must yield to point F, that being a natural boundary. The remaining boundary, the southern boundary, from F to K on the plat is not questioned.

We cannot adopt plaintiff's contention.

The sale, concededly, is not clear, and in determining whether it was intended to pass title to all the land the heirs owned we must consider the instrument as a whole and in connection with other proved facts as shown by the record.

Evidently the heirs did not think so, for, as alleged by plaintiff, they sued for and recovered a part of the land, namely, the 225/1000 acre indicated by the angles A, B, C, M on the plat. Why they did not sue for the remaining 521/1000 acre embraced within the angles C, M, D does not appear.

The contract between Cookston and Pringle and Davis was entered into on March 6, 1926, and shortly thereafter, to-wit, on March 11, 1926, Pringle and Davis leased to one J. L. Ferguson for the purpose of mining for and extracting oil and gas therefrom, the very same tract of land which Cookston pointed out as belonging to the heirs of Calvin Davis and which plaintiff here contends they did not own. Evidently they then thought Cookston's information good.

It is true that thereafter J. C. Davis obtained deeds to the land, one from Walter Hebert, on April 7, 1926, one from William T. Russell, on April 14, 1926, and one from F. J. Miles, on July 10, 1926.

In the contract between Pringle and Davis and Cookston the value of the land is fixed at $620.00 an acre.

The sale from Russell to Davis expressly excludes warranty and the price is $100.00. In addition to this, the deed recites:

"Vendor never owned nor acquired this property from Dr. Calvin Davis, and that he (Russell) never sold or conveyed said property to F. J. Miles."

The sale from Miles to Pringle and Davis was for a consideration of $50.00, and that from Hebert to Davis alleges a consideration of $100.00. Since the land was worth $620.00 an acre, as declared in the contract, obviously the deeds from Miles and Hebert also were mere quitclaims.

Russell had sold the land to Miles by exactly the same description as he had acquired it from the heirs of Calvin Davis. In their sale to him they declare:

"and being the same land purchased by Dr. Calvin from A. S. Norris on the 12th day of December, A. D. 1901, recorded in deed book No. 7 page 572 on January 2nd, 1904."

And Russell in his sale to Miles declares:

"this being the same land purchased by Dr. Calvin Davis from A. S. Norrid on the 12th day of December, A. D., 1901, recorded in deed book No. 7 page 572 on June 2nd, 1904."

But Dr. Calvin Davis did not purchase the land in controversy from Norrid on December 12, 1901. He bought it from him on October 25, 1901, by deed recorded in deed book No. 7 at page 578. What he purchased on December 12, 1901, was the tract lying southwest of that in controversy and indicated on the plat by the angles K, L, E, F, G, and it is this latter tract and not the land in controversy that the heirs intended to sell to or Russell to buy.

It is true that the sale of December 12, 1901, apparently includes the land in controversy, but as Dr. Calvin Davis was already the owner of that land in virtue of his purchase from Norrid of October 25, 1901, it is not at all probable that he intended to buy or Norrid to sell him the same land twice.

The sale with exclusion of warranty from Russell to J. C. Davis is of no value as evidence that the former and not the heirs of Dr. Calvin Davis owned the land. Russell had sold to F. J. Miles what he had bought from the heirs of Dr. Calvin Davis and by exactly the same description.

In his deed to J. C. Davis, Russell says:

"Vendor never owned nor acquired this property from Dr. Calvin Davis, and that he (Russell) never sold or conveyed said property to F. J. Miles."

Of course, if Russell did not acquire the land from Dr. Calvin Davis or his heirs and did not sell it to F. J. Miles (and he expressly says he did not) the heirs of Dr. Calvin Davis still own it.

The description in the sale from Russell to Miles is exactly the same as that in the sale from the heirs of Dr. Calvin Davis to Russell.

Neither is the deed from Hebert to J. C. Davis of any value as showing that the heirs of Dr. Calvin Davis did not own the land. Though not in express terms a quit-claim the recited price shows it to have been such. As the contract sued on fixes the value of the land at $620.00 an acre and the price paid Hebert was only $100.00 if he owned the land he only got one-fifth of its value.

The source of Hebert's title is supposed to be a sale from J. C. Davis to him of a tract of land described as:

"All of N½ of Sec. 25 and 26 Township 10 North Range 1 East except that portion previously deeded and sold to railroad company, G. P. Tullos and R. N. Price; also one lot of 4 acres situated in NE corner Sec. 27 Township North Range 1 East known as lot No. 14 with all improvements thereon."

As stated by the District Judge in his reasons for judgment:

"the description in this deed is general, vague and indefinite and would be hard to locate same."

Besides, if the land in controversy was included in the sale by J. C. Davis to Hebert, Davis would not have forgotten it and would have told Cookston it was when the contract between him, Cookston and Pringle was being confected. If Davis intended to convey the land to Hebert, as he was only one of four heirs he only conveyed him an undivided fourth of it and the heirs still owned the remaining undivided three-fourths. Had the land in controversy been a part of that purchased by Hebert it is not probable he would have bought without the signature of the three other heirs.

And if the land in controversy was included in the sale by the heirs to Russell, J. C. Davis would have so informed Cookston when the latter opened up negotiations with him.

The sale from the heirs of Calvin Davis to Russell was made in April, 1914, and that from J. C. Davis to Hebert in January, 1919. If the latter sale was intended to include the land in controversy and the former sale also to include it then J. C. Davis sold to Hebert in 1919 the same land that he and his co-heirs had sold to Russell in 1914.

We think the correct explanation of the various deeds is that neither the heirs in their sale to Russell in 1914 nor J. C. Davis in his sale to Hebert in 1919 intended to include the land in controversy; otherwise we should be unable to comprehend how any part of it could have been recovered in the lawsuit mentioned in the petition.

The escrow agreement contains conflicting clauses, and concludes as follows:

"But, in the event said acreage is found, the said escrow agent shall deliver to the party of the third part the check for five hundred dollars, *notwithstanding any other stipulation herein made.*" (Italics ours.)

Under all the evidence we think it proved that eight-tenths of an acre of land, namely, that embraced in the angles A, B, D, M on the plat, was pointed out by Cookston to plaintiff and J. C. Davis as having been purchased by Dr. Calvin Davis and not sold by him or his heirs, and that they were not aware of the fact before, and that the land in fact had not been sold by Dr. Calvin Davis or his heirs, and that Cookston fully performed his part of the contract between himself, plaintiff and J. C. Davis.

We find no error in the judgment appealed from and accordingly it is affirmed.