No. 878

First Circuit

## WRIGHT v. LOUISIANA ICE & UTILITIES CO.

(December 8, 1931. Opinion and Decree.)
(February 8, 1932. Rehearing Refused.)
(March 30, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

Benton & Benton, of Baton Rouge, attorneys for plaintiff, appellee.

Thomas J. Martin, of New Orleans, attorney for defendant, appellant.

MOUTON, J. This case was remanded by us to the district court for trial.

Defendant filed an exception of no cause or right of action to the amended and supplemental petition of the plaintiff.

His grounds of exception are that plaintiff has failed to allege that the death of plaintiff's husband arose out of and in the course of his employment, and that he was engaged in a hazardous trade or business.

In our original opinion the ruling was against these contentions of defendant, and which are therefore without merit.

The exception being disposed of, we will now pass to the consideration of the merits of the case.

John Wright, deceased husband of plaintiff, was employed by defendant company to deliver ice to its customers in the city of Baton Rouge. After delivering a block of ice to one of these customers, about noon, August 19, 1929, Wright suddenly collapsed, and died immediately.

Plaintiff brings this suit for compensation under the Employers' Liability Act.

No autopsy was made of the deceased. Four physicians, Bird, Lorio, Tucker and Jones testified as experts at the trial. They all agreed that without an autopsy the cause of death could not be positively ascertained. From the information obtained by them of the history of the case, these physicians differed, however, widely in reference to the cause of Wright's death.

Drs. Bird and Lorio ascribed it to acute dilation of the heart. Dr. Tucker said evidently he had a heart lesion, and died from rupture of the coronary artery that feeds the heart, while Dr. Jones was of the opinion that his death was caused by cerebral hemorrhage.

They agree, however, that the diseased condition of the heart of deceased existed prior to his sudden death, although he might have been unaware of it; also, that physical exertion or overstraining was "hard" on his heart and had a deleterious effect. In alluding to the hardening of Wright's artery, to which Dr. Jones, expert for defendant, refers, he says that any sort of strain, a cup of coffee or tea, boisterous laughter, or any emotional disturbance is bad for a person suffering with his arteries in that condition.

It is shown by the testimony of the physicians that a person suffering from a damaged heart, as explained by them, by

carefully guarding against physical labor or exertion may prolong his period of life for a long time.

Dr. Tucker, testifying for defendant, in referring to rupture of the artery next to the heart which he thought was the cause of Wright's death, said if a person in that condition followed his instructions he might live "indefinitely," or, as we understand his answer, the normal span of life.

The other physicians were likewise of the same opinion, if a person lived a quiet and sedate life and abstained from physical labor or overexertion, though he might be suffering from a weakness, disability, or disease of the heart, to which they referred in their testimony.

It is shown that deceased had started about six on the morning to deliver ice on the day of his death. The ice was delivered in blocks weighing, twelve, twenty-five, fifty, and one hundred pounds. Up to the noon hour of that day, about the time he succumbed, he delivered at different places five thousand and one hundred pounds of ice. He had for assistant in the delivery of the ice, Dean Brown, a boy helper, who says he never carried blocks of one hundred pounds, but sometimes helped Wright in carrying those of that size. It must be inferred from that statement that sometimes Brown did not assist him in carrying these one hundred pound blocks which Brown says Wright carried on his shoulders. Evidently Wright was overstraining himself, else he would not have required the assistance of his helper in moving the heavy blocks of ice.

Wright died in the kitchen of Mrs. Kahn's residence, where Sarah Spand was working as a servant. Sarah testifies that Wright seemed to be very warm, was perspiring profusely, and that his clothes were wet with perspiration. All of that indicated considerable exertion on his part, and which is not at all surprising when it is considered he had delivered before the noon hour of that day five thousand and one hundred pounds of ice, in blocks varying in weight from twelve to one hundred pounds, with the help of a boy as his assistant. In the light of that testimony and the accompanying facts and circumstances to which we have referred, the only logical conclusion that can be reached is that Wright overexerted or overstrained himself, considering the pre-existing condition of his heart, which brought about its acute dilation, which we think the preponderance of the evidence shows, or a rupture of the coronary artery, or cerebral hemorrhage, causing his death.

In the case of Becton v. Deas Paving Co., 3 La. App. 683, the court said:

"When an injured employee works in excessive heat which caused an enlargement and dilation of the heart which rendered the heart unable to properly function, it was an 'accident' within meaning of the Workmen's Compensation Act defined by Section 38 of Act 20 of 1914."

Here, whether there was a dilation of the heart, rupture of the coronary artery, or cerebral hemorrhage, it was an accident within the section of the statute above cited. In the case hereinabove cited, the court, in referring to an exhaustive note in 19 A. L. R. 110, mentioned the rule as follows:

"An award of compensation may be made although there was a pre-existing heart disease, if that disease was aggravated and accelerated by an accidental injury which arose out of and in the course of the employment and was the proximate cause of the disability or death."

Carrying the ice and delivering it was an effort put forward by Wright in the course of his employment which had a causal connection with the accident resulting in his death, and it must therefore be held that the employment was the contributing cause. It was the strain, the overexertion which brought the breakdown. The disease from which deceased suffered very probably was in its nature progressive, and might have ultimately resulted in his death; but the injury which caused it is directly traceable to the employment. In such cases, where, as it happened here, the death of the employee has been accelerated or hastened by the accident, the employer is responsible under the Employers' Liability Act. Becton v. Deas Paving Co., 3 La. App. 683; Behan v. Honor Co., 143 La. 348, 78 So. 589, L. R. A. 1918F, 862; Craft v. Lumber Co., 151 La. 281, 91 So. 736; Hardin v. Higgins Oil & Fuel Co., 147 La. 457, 85 So. 202; Johnson v. Vernon Parish Lumber Co., 151 La. 667, 92 So. 219.

Counsel for defendant contends that Wright was addicted to drinking, and that alcoholism was the cause of his death. No doubt he drank, but there is no proof that he was an habitual drunkard. The proof is that he always appeared perfectly sober when on his rounds for the delivery of the ice. It is certain that, when he fell in Mrs. Kahn's kitchen, he had given no evidence whatsoever of being intoxicated.

Section 28 of Act No. 20, 1914, page 59, says:

"That no compensation shall be allowed for an injury caused * * * (2) by the injured employee's intoxication at the time of the injury."

It is clear that under that section of the statute defendant company could not claim exemption from liability.

There is no proof that Wright's heart had been affected by excessive indulgence in alcoholic liquors. Even if inordinate drinking had brought on a diseased heart, progressive in its character, and which might have ultimately resulted in his demise, still, as the injury caused his death sooner, it must be held under the authorities above cited that he died from an accident within the meaning of the compensation statute.

Counsel for defendant cites the case of Sears, Roebuck & Co. v. Industrial Commission, 334 Ill. 246, 165 N. E. 689, 692, where the court said:

"The burden is on the claimant to show by a preponderance of evidence, not only an accidental injury received, but that the loss complained of was caused by the injury."

In this case, plaintiff has carried that burden as hereinbefore pointed out. In the case cited, the court also said that an award under the compensation act cannot rest upon conjecture or surmise.

In this case, the right of plaintiff to recover does not rest on possibilities or probabilities, but finds, under the proof, an abiding place in the legal certainty required to fix liability on the employer in cases of this character.

On the original examination, as a witness, O'Donovan, delivery superintendent of defendant company, said that in the previous year of his employment Wright was getting a daily wage ranging from $4 to $4.50; that he was getting the day of his death a wage of $4.07.

When recalled as a witness, attorney for plaintiff read from a pay roll of defendant company where it appeared that his pay on the day of his death, including four previous days, was at the rate of $4.72 per day. There was no denial by O'Donovan that deceased was not getting that amount at the time of his death.

In the case of Menzel v. Southern Stevedoring Co., 7 La. App. 703, which presented features similar to those in the present case, the court said:

"The daily rate of pay in force at the time of the injury fixes the basis of the amount of compensation to which he [meaning employee] is entitled."

The wages so fixed we find to be in conformity with section 8 of Act No. 20 of 1914, as amended by Act No. 216 of 1924, p. 399 (also amended in 1928, Act No. 242), where at page 402, subsec. 3, the term wages is defined to mean "the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury, etc."

In the instant case the district judge adopted as a basis the rate of pay which Wright was receiving under his contract of hiring at the time of the injury; and when, as appears from the evidence, he was working seven days a week.

In the case above cited the court allowed the surviving widow of the deceased employee 32½ per cent of his wages, the allowance granted plaintiff herein, in which we find no error.

Counsel for defendant is also asking for a reduction of $70 for funeral expenses, to which we do not find it entitled.