### SMITH v. METROPOLITAN LIFE INS. CO.
### No. 4649.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1934.

Philip P. Long, of Carthage, Tex., and Lewell C. Butler, of Shreveport, for appellant.

Jackson & Smith and Charles L. Mayer, all of Shreveport, for appellee.

MILLS, Judge.

Sidney Smith, husband of plaintiff, was, on September 14, 1931, employed as an engineer at the plant of the Magnolia Petroleum Company, a subsidiary of the Standard Oil Company, at Gilliam in Caddo parish, La. He was protected by a group insurance policy issued by the Metropolitan Life Insurance Company. This policy provided, in case of death, for the payment of an amount equal to one year's annual rate of pay and an additional sum in like amount in case the death occurred by accident. The yearly rate of pay of deceased was $1,920. The insurance company has paid the amount for ordinary death, and plaintiff is now asking for the additional amount on the ground that the death of her husband, which occurred September 20, 1931, was accidental, in that it was due to overexertion and overheating while engaged in washing out a boiler.

The lower court, being of the opinion that the facts proven failed to show an accident, rejected plaintiff's demand. From this judgment she has appealed.

The plant in which deceased worked as an engineer was supplied with two boilers. At the time one was out of repair and not available for use. To function properly, the boilers must be washed out periodically. Under ordinary conditions, before washing a boiler is allowed a whole day in which to cool off. Because of the necessity of shutting down the plant, it is probable that on this occasion the washing out was done in the shortest possible time. The boiler was located in a pit three feet deep, and was inclosed by a small tin house. Until the boiler has cooled, the interior is so intensely hot that a washer has to frequently go outside to cool off. The washing is done by removing the handholds

and inserting a small hand-pressure hose. At the same time the workman strikes the sides of the boiler with a hammer to dislodge any scales which may have formed upon the inner surface. It is estimated that it takes four hours to wash a boiler. Of this time some three-quarters of an hour to an hour is required to do the actual work; the rest of the time being devoted to the cooling off of the boiler.

Deceased, on the 14th day of September, 1931, arrived on the job at about 8 o'clock in the morning. Some time thereafter he cut off the boiler and proceeded to cut grass about the premises until it had cooled sufficiently to enable him to begin washing it out. The testimony does not establish definitely just when he ceased the grass cutting and went to work on the boiler. The testimony of defendant's sole witness, E. L. Nelson, in charge of the plant, is that he saw deceased at 8 o'clock, then went off and returned about 11, at which time Smith had removed the handhold bolts and had partially washed the boiler; that he complained to Nelson of being sick, and was unable to make a necessary change of stop valves alone. Nelson says that Smith took sick "some time in the forenoon. I imagine it was early in the forenoon."

O. F. Simmons, also an engineer at the plant, was called back at about 1 o'clock to relieve Smith. He says that he found the boiler still warm at that time, and that he finished the job of washing it. When he arrived, he found Smith propped up against a building suffering from severe cramps. He says that Smith exclaimed, "Simmons, I'm gone."

It appears then that the boiler was shut off some time after 8 o'clock and had been partially washed before 11. It then appears that, in the emergency, Smith started washing the boiler before the expiration of time needed for its cooling. His working clothes were found dripping with sweat.

Two physicians testify as to the cause of death. Dr. T. B. Tooke was called to the home of the deceased immediately after the above occurrences. He found him in bed suffering intensely from cramps in all his muscles. He says positively that the cause of death, which occurred six days later, was heat exhaustion. He says that he had treated Smith on August 8, 1931, for some stomach trouble, and that Smith told him after his heat stroke that he had not been feeling well for a day or two prior to the accident. The physician says that the overheating caused congestion of the brain, which affected the nervous system, which in turn caused the severe cramping of deceased's muscles.

Dr. W. S. Harmon treated Smith some two or three days later at the hospital. He says that the patient was admitted in a semi-conscious condition, apparently in a state of shock; that the cause of his subsequent death was heat exhaustion; that overheating deranges the whole system; that in the case of Smith the particular cause of death was respiratory paralysis due to heat prostration.

In the absence of proof of any specific disease, we do not think that the fact that deceased was not feeling well just prior to or at the time of the overheating is important; the testimony of the only experts appearing being that his death was the direct result of heat exhaustion.

We are satisfied from the surrounding circumstances, the condition in which he was found and the testimony of the physicians that in his haste Smith overexerted himself and, because of the intense heat in the tin enclosure, became fatally overheated.

From an examination of the many cases cited it appears that the judgment of the lower court is correct if the case is governed by the jurisprudence in other states. We have, however, in this state two decisions which we think are controlling and decisive of the issue presented here. In Becton v. Deas Paving Co., 3 La. App. 683, this court held: "We are of the opinion that plaintiff suffered an accident as contemplated under the law. He was working in a hot place on a very hot day. He over-exercised himself, which caused an enlargement or dilation of the heart, and compensation was thereby broken. A condition was brought about by the heat and exercise which rendered the heart unable to function properly. This was sudden and happened unexpectedly. * * * It resulted from heat and over-exertion."

In Wright v. Louisiana Ice & Utilities Co., 14 La. App. 621, 129 So. 436, and Id., 19 La. App. 173, 138 So. 450, we find that overexertion and overheating caused by carrying heavy pieces of ice in extremely hot weather was held to constitute an accident. See, also, Richey v. Union Paving Co., 151 So. 657, decided by this court January 3, 1933.

Though distinguished from the facts in that case in which compensation was denied, these decisions are recognized as authority in Fleda Jackson v. Travelers' Ins. Co., 151 So. 790, decided by this court January 3, 1934, and not yet reported [in State report]. It is true that the above cases all come under the provisions of the Workmen's Compensation Act (Act No. 20 of 1914, as amended), which our courts have many times held must be liberally construed in favor of the workman. But this liberality extends only to the construction of the act itself and not to the proof of facts.

The word "accident" is defined in section 38 of the act as "* * * an unexpected or unforeseen event happening suddenly or violently. * * *"

The policy provides: "Accidental death and dismemberment insurance is payable for loss resulting directly and independently of all other causes from body injury sustained

through violent external and accidental means."

We can see no material difference in the two definitions. On the authority of the above decisions, we conclude that the death of plaintiff's husband was due to an accident within the terms of the policy.

The judgment appealed from is therefore reversed, and judgment is now rendered in favor of plaintiff, Mrs. Esther Smith, and against defendant, Metropolitan Life Insurance Company, in the sum of $1,920, with 5 per cent. per annum interest thereon from September 20, 1931, until paid, and costs of both courts.

DREW, J., concurs.