## LYNN v. ARKANSAS FUEL OIL CO.

### No. 5969.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 3, 1939.

Rehearing Denied Dec. 1, 1939.

Writ of Certiorari and Review Denied
Jan. 9, 1940.

B. C. Dawkins, Jr., and Blanchard, Goldstein, Walker & O'Quin, all of Shreveport, for appellant.

Isaac Abramson, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff, who died since the lodging of this appeal, sued to recover workmen's compensation on the basis of total disability. The specific facts relied upon for recovery and as set out in the petition are that he "sustained an accident at the place of business of the defendant company, when, as a result of strenuous lifting in the boiler plant * * * petitioner sustained a severe strain; and coupled with the fact that he was working in the boiler room were the temperature was unusually high, became overheated and lost consciousness."

The issues of the case are now narrowed to one, to-wit:

Did the deceased suffer an accident within the meaning of the Workmen's Compensation Law (Act No. 20 of 1914) by becoming overheated, while laboring for defendant, his employer? It is not now seriously contended that deceased experienced an unusual strain while performing the duties of his employment.

From a judgment for the deceased, defendant appealed.

The deceased had been in the employ of defendant and its corporate predecessors for twenty-five years. He was 62 years old when the alleged accident occurred on October 16, 1937. At that time the work he was paid to perform was not of a heavy character. It consisted of washing the concrete boiler room floor six times per month by use of water of nearly boiling temperature, forced through a ¾" hose, and reading and recording meter and gauge registrations about the premises.

The deceased reported for duty at twelve o'clock on the night of the alleged accident. He immediately removed the hose from the rack, coil at a time, stretched it out on the floor and turned on the hot water, which was supplied by a heater and pump from without . the building in which was located the boilers and compressors. The hot water was forcefully discharged from the end of the hose held by the deceased and spilled out over the floor some six feet ahead of him. This was continued around and about the boilers, twelve in number, until the floor was cleansed of oil, grease, etc. The hose was again carefully replaced on the rack in the condition it was before being taken down. The deceased testified that one hour was consumed in washing the floors. The only other witness present, à Mr. McDonald, testified it required only twenty minutes to do it.

The deceased, immediately after putting the hose on the rack, went outside for a few minutes. Upon his return therein, Mr. McDonald, his friend and fellow workman, discerned that he was acting abnormally. He approached deceased, put his arms about his body and asked what was ailing him. The deceased stated that he wished to go home. He was sent home immediately. He went into a faint or semiconscious condition which lasted several hours. It was observed that when he returned to the building that there was cold sweat on his hands and forehead. Sweat had also dampened those portions of his clothing which fitted closely against the body. Since this experience, deceased has been unable to do work of any character.

It is the contention of the substituted plaintiffs that the hot air about the boilers and the heat and steam from the water used to wash the floor, coupled with the physical effort put forth by deceased, caused him to become overheated and that the fainting spell was a direct result of this combination of factors. This result, it is contended, amounts to an accident within the intendment and meaning of the Workmen's Compensation Law, as interpreted in several decisions of this and other courts of the state.

In August, some two months prior to the alleged accident, the deceased consulted Dr. Hargrove, his personal physician, because he had had spells of dizziness, was sore and stiff. Physical examination by the physician revealed that the patient was suffering from very high blood pressure and a weak heart. However, he continued to work regularly until the crash came.

Fellow workmen, for several months prior to the alleged accident, were convinced from deceased's movements and actions, that he was deteriorating physically and mentally.

It was cool the night the deceased collapsed. The temperature without the building registered around 65° Fahrenheit and that within approximately 10° more. The lower court found the inside temperature to have been not over 80°. This, under the testimony in the case, appears about correct. McDonald was not, to any extent, affected by it, although the temperature about the locus of his work was greater than that whereat deceased worked on this particular night.

The deceased admitted that the work he regularly performed for defendant was not heavy. It did not require strenuous physical effort nor unusual physical movements to perform such duty. The main exertion necessary therein was to remove the hose from the rack and to replace it thereon after being used. This had been done and several minutes had elapsed before it was discovered that deceased was acting unnaturally.

While it is likely true the deceased's body was, to some extent, affected, not so much, if any at all, from the prevailing temperature within the building, but by the heat and steam emanating from the hose he was using, yet we are not convinced that this added heat was of sufficient intensity to produce exhaustion; that it was impotent to produce a condition of overheatedness amounting to an accident.

The lower court largely based its judgment upon Wright v. Louisiana Ice & Utilities Company, 19 La.App. 173, 138 So. 450. The facts of that case are quite

dissimilar to those of the case at bar. There, the deceased fell dead of heart failure in the kitchen of a customer on a hot August day, after he had delivered to her a quantity of ice. He and a helper had to that time on that day delivered over 5,000 pounds of ice, in blocks weighing from 12 pounds to 100 pounds. Wright's clothes were wet from perspiration. It was evident, as the court correctly found and held, that the deceased's heart failed to function from over-exertion and over-straining physically on this hot day. Life was shortened by the heart's premature debacle. The cardiac collapse was unquestionably accelerated by the body's over-heated condition, augmented by physical over-exertion.

Plaintiffs, in addition to the Wright case, rely also upon: Becton v. Deas Paving Co., Inc., 3 La.App. 683; Richey v. Union Paving Co., La.App., 151 So. 657, 658; Jackson v. Travelers' Ins. Co. et al., 180 La. 43, 156 So. 169; Renfrow v. Caddo Parish Police Jury et al., La.App., 155 So. 291; Biggs v. Libbey-Owens-Ford Glass Co., Inc., et al., La.App., 170 So. 273, and other cases similar in facts.

The Becton and Richey cases involved sudden heat strokes, immediately preceded by strenuous physical exercise in very warm atmosphere. Both cases are easily differentiated from the instant one.

In the Jackson, Renfrow and Biggs cases it was held that the accidents therein recognized were superinduced by performance of normal, but heavy work. Debacle in each case came suddenly and unexpectedly while the workman was in the discharge of his usual and regular duties. The heaviness of the normal work in each case, the performance of which necessitated the exercise of considerable physical exertion, caused an organ or organs, already affected by progressive disease, to give way. Becoming overheated or working under excessively hot conditions was not present in either case.

In the cited cases, it is announced, as a general legal proposition, that if excessive heat or heavy lifting or straining, although usual and customary, or both, cause or contribute to a physical breakdown or accelerate its happening, the legal requirements necessary to constitute an accident are present. and that such cases are compensable.

Dr. Hargrove, who was better acquainted with deceased's physical condition than anyone else, testified that that condition was of such a character that he would expect the deceased to have dizzy, fainting spells at any time without contribution from labor, exercise, etc. He did not think the heat from the warm water used to wash the floor was sufficient to precipitate the spell deceased had there. The temperature of the building, he was equally sure, would not have done so. Plaintiff's medical experts likewise testified. The burden of Dr. Hargrove's testimony, with which deceased's physicians do not disagree, is that the diseases affecting deceased were of such character and had made such progress upon the organs involved, that it was to be expected that he would be overwhelmed by them at any time and under normal conditions. Such diseases, he said, being incurable and progressive, it is. but a matter of time for them to produce death.

He was certain that the deceased's physical and mental condition from the time of the alleged accident until the day of trial, and during the intervening time, was of the character to be expected in his case; that such condition was but the natural and normal result of the progress of his ailments. This being true, as we believe it to be, no causal connection between these conditions and deceased's employment can be found.

Ben F. Lynn, original plaintiff, died on September 18, 1939. His widow, Mrs. Maudie May Lynn, and his three children, sole heirs, viz., Lonnie Lynn, Gladys Lynn Stump and Audrey Lynn Lofley, were recognized as such and placed in possession of deceased's property, including this judgment appealed from. These persons voluntarily made themselves parties to this suit and will be bound by the judgment herein rendered.

We are of the opinion that the judgment appealed from is erroneous, and, for the reasons herein assigned, said judgment is annulled, avoided and set aside, and this suit dismissed at plaintiff's cost.