## NICKELBERRY v. RITCHIE GROCER CO. et al.

### No. 6167.

Court of Appeal of Louisiana.
Second Circuit.

May 3, 1940.

Rehearing Denied June 10, 1940.

Writ of Certiorari and Review Granted July 18, 1940.

Judgment of Court of Appeal Affirmed Jan. 6, 1941.

See 200 So. 330.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellees.

TALIAFERRO, Judge.

Plaintiff, alleging permanent total physical disability resulting from an accident while performing his duties as a workman, sues his employer, Ritchie Grocer Company, Inc., for sixty-five per cent of his weekly wage for 400 weeks. The following facts are alleged and relied upon as constituting the accident, to-wit:

That while lifting a heavy package in the latter part of May, 1938, plaintiff experienced a shortness of breath; that he became ill and remained so for approximately a week in the latter part of May or the 1st of June, 1938, as a result of the continued lifting and straining necessary to perform the duties of his employment; that during the first week of July, 1938, while lifting a heavy beam, he was stricken with a "violent smothering feeling, which was almost blinding in intensity"; that he had to drop the beam and sit down in order to catch his breath, and rest several minutes before he was able to resume work. He also alleges: "That the above described accident happened not only once but several times during the month of July, 1938, each time while your petitioner was lifting or moving some heavy object in the course of his employment; that said choking feeling became more intense each time until your petitioner was unable to do the work that he was employed to do."

And that on the 8th day of August, 1938, his physical condition was such that he had to quit work.

The suit is resisted upon the sole ground that plaintiff suffered no accident while working for defendant. It is admitted that he is afflicted with a heart ailment, but causal connection between such ailment and his employment is specifically denied.

Defendant, at the conclusion of introduction of its testimony, tendered and filed an exception of no right of action, based upon the alleged insufficiency of plaintiff's testimony, and coupled therewith, in the alternative, a plea of prescription of one year, in which it is averred that plaintiff's present "condition has been of long standing and occurred more than one year before the institution of this suit".

The exception was overruled; the plea of prescription was referred to the merits; plaintiff's demand was rejected. He appealed.

Defendant discusses the exception of no right of action along with its argument on the merits. The plea of prescription is briefed and argued at length.

We have reached the conclusion that plaintiff's present and past disability may not be properly ascribed to an accident within the purview of the Employers' Liability Act, Act No. 20 of 1914, and, therefore, he is without right to compel payment of workmen's compensation to him. This being true, there was nothing to prescribe or perempt. The plea, therefore, tenders only a moot issue.

Plaintiff entered defendant's employ on March 20, 1937. He ceased to work for it on August 17, 1938; not on the 8th of that month, as alleged. He was a strong, robust (negro) man, weighed nearly 250 pounds, and is now 51 years of age. He excelled in physical strength all of his coworkmen; was energetic and never shirked a task because it entailed heavy lifting or required unusual physical effort. For many consecutive years prior to his service with defendant, his different employments required of him heavy manual labor. Without exception, his services

were entirely satisfactory to his several employers.

On August 19, 1938, Dr. W. L. Bendel visited and prescribed for plaintiff. He was found then to be in severe distress with shortening of breath; breathing was done with much difficulty. His abdomen was swollen and the legs markedly enlarged from edema or fluid in the tissues. The doctor says "he presented an apparent picture of what is called cardio renal compensation, which involved the heart, kidneys and most probably the liver". The heart ailment is commonly referred to as angina. At the date of this examination, plaintiff informed Dr. Bendel that he had been complaining of these ailments over a period of some nine months and attributed his condition to heavy work over a long period of time. Dr. Bendel did not then think he would live more than eight weeks. His diagnosis and conclusions were based upon physical examination and scientific tests pertinent to such a case. Urinalysis revealed definite evidence of the existence of Bright's disease. He was of the opinion that syphilis was the original cause of the heart involvement.

Absolute quiet is the best known specific for persons in plaintiff's condition. He was advised to do this and obeyed by staying in bed five weeks. He was totally disabled to do work as a laborer when examined by Dr. Bendel. This condition, it is almost certain, will be permanent, however, at date of trial he admitted substantial improvement.

Dr. Bendel is quite positive that plaintiff's ailments and disability, in view of the history given him and of said findings, are not traceable to an accident. He intimated regret at being forced to this conclusion.

Other eminent physicians agree with Dr. Bendel's findings, and all concur in the conclusion that plaintiff's condition is the result of the progression of the original disease, the incipiency of which possibly dates back many months, a year or more. They concede that heavy work and lifting by a laborer so affected could, and often does, precipitate a breakdown or contribute to or hasten it.

Defendant is a wholesale grocer in the City of Monroe, Louisiana. Plaintiff was an ordinary laborer and performed such work as was from time to time assigned him on or about the premises, including loading and unloading freight cars.

The Cudahy Packing Company was the lessee of a part of defendant's lot, on which was located a cold storage plant. The lease expired on January 1, 1938. Defendant decided to convert the plant building into a warehouse and directed plaintiff and two other negro workmen to remove the partitions and other interior structures, which was necessary before skilled carpenters could begin work. The work assigned these three laborers was, in the main, heavy and involved breaking up concrete, disengaging and removing heavy timbers.

We are convinced from defendant's records and the testimonial proof pertinent thereto that the heavy work of these three negroes, above mentioned, was completed prior to April 1, 1938. The carpenters began the finishing work about this date and all witnesses, including plaintiff, agree that this phase of remodeling the building was not begun until the work assigned to the three negroes had been completed.

Plaintiff testified that in May, 1938, while lifting a heavy package, his breath became short; that this was the first time this symptom manifested itself, but that it was not nearly so severe as subsequent ones. He did not cease labor at all on its account. He further testified that in July following, while removing heavy timbers from the old plant, he underwent an unusual strain; a heavy timber "overpowered" him; that at that time he "felt something pull right in here", indicating immediately below the nipple of the left breast; that he "felt a dizziness and blindness and shortness of breath" which has been "that way ever since"; that he sat down for a few minutes and then resumed work. He continued to work regularly until forced to quit in August. Only one of the other two workmen was present at the time of this incident. This workman corroborated plaintiff as to the facts thereof. However, both are clearly in error as to the time it could have occurred. It could not have happened in July because the removal of the heavy timbers by these laborers was completed long prior to that month. The carpenters were then far into the task of reconstructing the interior of the building.

No report of this experience, nor of subsequent discomfort or pain plaintiff claims to have had, was made by him to defendant's officials or agents. His excuse for not doing so is that he thought, and probab-

ly honestly so, that he would soon regain sound physical kelter.

Plaintiff also testified that after the experience, supposedly in May, he often noticed that his breath was short and at times when sweeping the office, it would be so severe that he had to lean against a post and rest until relieved. A fellow workman testified that on the way to work (after the alleged July spell) plaintiff, on account of shortness of breath, would occasionally be forced to stop and rest.

The doctors all agree that diseases of the character now afflicting plaintiff are progressive in character. It requires years in some cases for them to bring about the conditions found in plaintiff. It is certain that death will ultimately result therefrom. Whether life can be prolonged depends upon several things. Some people, due to excellence of physical constitution, live many years without systematic efforts to control the ravages of the diseases, while others soon pass away regardless of resort to best known methods to arrest their progress.

The record is free from doubt that no organ of plaintiff's body gave way while working for defendant. He continued to perform his usual manual labor for several months after the straining on which he bases the contention that he suffered an accident. He had spells of shortness of breath quite often when not working or when not doing heavy work. But, as said by Dr. Bendel: "The greater the exertion the greater the shortness of breath and the greater the tendency to decompensate."

This, however, without a sudden breakdown of an organ or organs, precipitating disability, is insufficient to constitute an accident under the Employers' Liability Act and the jurisprudence construing it.

Before filing this suit plaintiff felt so well that he applied to defendant for the same line of work he was doing when he had to quit. His request was declined on the advice of an examining physician that his heart was in such an impaired condition that it was liable to collapse at any moment.

In this connection, it is apropos to meditate upon the following statement made by this court in McQueen v. Tremont Lumber Company, 151 So. 683, 686, viz.: "It is a harsh rule which excludes from employment the servant who, for a period of many years, has proved his fidelity to duty, because, forsooth, it is known that eventually he will become disabled, from known physical defects, to carry on."

Plaintiff contends that his case falls within the pronouncements of the courts in the following cases, viz.: McMullen v. Louisiana Central Lumber Co., 2 La.App. 773; Id., 3 La.App. 562; Becton v. Deas Paving Company, 3 La.App. 683; Wright v. Louisiana Ice & Utilities Co., 19 La.App. 173, 138 So. 450; Richey v. Union Paving Company, La.App., 151 So. 657; Smith v. Metropolitan Life Insurance Co., La.App., 152 So. 369; Renfrow v. Caddo Parish Police Jury, La.App., 155 So. 291; Biggs v. Libbey-Owens-Ford Glass Company, Inc., et al., La.App., 170 So. 273; Ozbolt v. Weber-King Manufacturing Company et al., La.App., 193 So. 383; Jackson v. Travelers' Insurance Company, 180 La. 43, 156 So. 169.

His position is not well taken. In these cases disability or death was produced by either a sudden or an unusual strain or physical exertion, by the giving way of some vital organ or organs as a consequence of manual labor regularly requiring heavy lifting or straining, or by exhaustion from heat while in the discharge of duty. The case, on the contrary, falls within the doctrine discussed and restated in Kirk v. E. L. Bruce Company, La.App., 190 So. 840, and in Lynn v. Arkansas Fuel Oil Company, La.App., 192 So. 764.

The judgment appealed from, in our opinion, is correct. It is affirmed with costs.