HARDY, Judge.
This is a suit by plaintiff against his employer and its insurer in which he claims the maximum allowable weekly compensation as for total and permanent disability. After trial there was judgment in favor of defendants rejecting plaintiff’s demands, from which he has appealed.
Plaintiff alleged that while engaged in the usual course of his work on October 3, 1952, he suffered an accident, later determined to have been caused by a heart attack, the result of which has rendered him totally and permanently disabled from the continuance of manual labor, which accident and the resulting disability was due solely and entirely to the strenuous work and strain in which he was engaged in the course of his employment. Defendants deny the occurrence of any accident or any causal connection between plaintiff’s disability and his employment.
Certain facts were established without dispute, namely, that on October 3, 1952, plaintiff was engaged in assembling door units, working by hand and with the aid of power tools, in a shop maintained and operated by his employer, and that he was admitted to the Baptist Plospital in Alexandria on October 4, 1952, at which time it was determined that he had suffered a coronary occlusion.
Plaintiff testified that at or about 3:00 o’clock in the afternoon, having finished his work on the assembly of a door, he carried the unit from his work bench to a point in the shop some fifty feet distant and that when he had set the door down he became sick, nauseated, hot and affected with chest pains; that he returned to his work table and rested there for some twenty or thirty minutes until a fellow employee, Parker by name, returned to the shop, at which time he complained of feeling sick, went to the wash room, bathed his face, and sat down to rest, and that he performed no more work during the afternoon. After leaving work Parker drove plaintiff to a point near the Town of Boyce, where plaintiff had left his automobile, and plaintiff drove on to his home. Plaintiff fur *885 ther testified that upon reaching home he complained to- his wife of being sick; that he went to bed and remained there until the next day when the pain in his chest and left arm had become so severe that his wife drove him to the hospital in Alexandria.
If plaintiff’s testimony on the above noted points, and details in connection therewith, should be accepted as convincing, and if it had been sufficiently corroborated by surrounding circumstances, unquestionably it would serve to establish his contention that he suffered an “accident” while engaged in the course and scope of his employment, despite the fact that there were no external evidences nor objective symptoms of injury. However, plaintiff’s testimony was so marked by inconsistencies and apparent contradictions that thorough examination and careful study thereof, in our opinion, fails to justify the factual conclusion for which he contends. We think it unnecessary to enter into any detailed analysis of plaintiff’s testimony and will point out only a few instances of the irregularities with which his testimony was marked. Although plaintiff insists that he suffered immediate pain which steadily grew more severe, he did not, indeed he would not, testify that he had given Dr. Hardy, his attending physician, any information to this effect. Plaintiff resisted, in what was either an evasion or a refusal to answer despite diligent questioning by his counsel and by the court. On the other hand, Dr. H. H. Hardy, Jr. of Alexandria, who attended and treated plaintiff after his admission to the hospital, as a witness for defendant testified unequivocally that plaintiff gave him no history whatsoever of the occurrence of an attack while engaged in his work on October 3rd, but did inform him that he developed the severe chest pain radiating into his arm approximately one hour before his admission to the hospital.
Defendant employer’s foreman, one Coleman, testified that he visited plaintiff in the hospital several days after his admittance and plaintiff advised him that he suffered his attack after he had chased some hogs out of his yard following his return home from work on October 3rd. This was steadily denied in the testimony of plaintiff’s wife, although Coleman testified that she was not present on the occasion of his visit with plaintiff. Plaintiff testified that he had no recollection of a visit from Coleman.
Another circumstance which gives rise to some doubt as to the validity of plaintiff’s attempt to connect his heart trouble with his employment is found in the fact that although plaintiff contends he suffered the attack while at work on October 3rd, no demand was made upon his employer until May 19, 1953, when plaintiff’s attorney notified the employer of plaintiff’s disability and made demand for compensation. This lapse of more than seven months is not explained except by plaintiff’s testimony, under questioning by his counsel, that he had been advised to await the outcome of a claim by another employee of this defendant based upon a heart attack, which case was also being handled by plaintiff’s counsel. This claim was settled by a compromise, as is established by the record, entered into on the 6th day of April, 1953.
According to the testimony of all of the medical witnesses who appeared in the case and testified on the point, a coronary occlusion is customarily accompanied by immediate and severe pain. It is significant that plaintiff, though he testified on trial that he began to suffer immediate pain from the onset of the attack, which steadily increased in severity, made no complaint of pain to his fellow employee Parker either before leaving his place of employment or while driving with Parker after leaving work. ,
Both plaintiff and his wife testified that in answer to questioning about a possible connection between plaintiff’s work and his heart attack Dr. Hardy expressed the opinion that there was no connection and that tobacco was the only thing that could cause a heart attack. This statement alleged to have been made by an able and experienced practitioner is patently unbelievable.
Our conclusion thoroughly accords with the finding of the district judge whose opinion contained the statement that
*886 “ * * * a reading and re-reading of the record has not been convincing that plaintiff has borne the burden resting upon him to prove the occurrence by the preponderance of the evidence. Neither do the surrounding circumstances reasonably corroborate his version of the attack coming upon him while at work.”
The liberality of interpretation and application of the Workmen’s Compensation Statute in favor of a claimant cannot be considered as supplying obvious deficiencies in proof.
While we would be justified in resting our determination of this appeal upon the finding above stated, we, nonetheless, think it appropriate to discuss the second issue which is tendered, bearing upon the causal connection between plaintiff’s disability and the work in which he was engaged. In order to justify our attention to this proposition it is necessary for the sake of argument, and only for that purpose, to concede the occurrence of an “accident” during the actual performance of work in the course of employment.
It is now well established that the term “injury arising from accident” must be comprehensively interpreted to the end that it embraces the collapse or giving way of affected parts of the body or organs thereof. It is therefore necessary for us to examine the effect of the heart attack suffered by plaintiff.
The medical experts who testified in this case are in agreement on a majority of the material points concerned, namely that the occlusion suffered by plaintiff was brought on by a degenerative disease of the heart and that an occlusion may occur as often under conditions of complete body rest and physical relaxation as during periods of exercise or exertion. The disease itself consists of a more or less gradual degeneration or weakening of the arteries of the heart and the actual occlusion is attributable to the cessation of the necessary supply of blood to a portion of the heart, which occurrence may be due to a thrombosis or embolus, or to a constriction of the blood vessels due to the hardening of the arteries.
In the instant case Dr. Hardy, the attending physician, refused to express an opinion as to a connection between the work in which plaintiff was engaged and the subsequent development of symptoms of his trouble.
Dr. Francis M. Bryan, a witness for plaintiff, testified that he examined Mr. Hastings on March 23, 1953, and his opinion may be summed up in the following answer to a question by plaintiff’s counsel on direct examination:
“Well, we know coronary heart disease is a degenerative or weakening disease of the arteries of the heart, and consequently a sudden strain, exercise, work, or whatever could conceivably contribute to a heart attack.” (Emphasis supplied.)
We find little help afforded by the testimony of two other expert witnesses tendered on behalf of plaintiff, Drs. Ferguson and Roy of Natchitoches, who testified by deposition. Neither of these witnesses made any examination of plaintiff and their testimony was confined to answering hypothetical questions, which questions did not sufficiently accord with our evaluation of the facts established in the instant case to a degree which would justify attaching any great weight or importance to the answers.
We think it must be admitted that the relationship between employment and affections of the heart presents an extremely close question which in many cases is not susceptible of certain determination. The medical testimony in the instant case, in our opinion, generally accords with the same character and nature of testimony in other similar cases and, at best, must be considered as being of a highly speculative quality. In view of this resultant uncertainty we have attempted to make a careful examination of the jurisprudence of the State bearing upon comparable factual circumstances as developed in cases involving alleged disability from heart affections.
*887 The case of Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 200 So. 330, was responsible for the establishment of a number of general principles which we think have been somewhat consistently maintained in subsequent cases and which principles we enumerate as follows:
(1). The legal requirements necessary to constitute an accident are fulfilled when the facts of a case disclose that many factors such as excessive heat, heavy lifting, or straining, or excessive exertion have caused or contributed to a physical breakdown or have accelerated its occurrence. In support of this general rule the Supreme Court cited Becton v. Deas Paving Co., Inc., 3 La.App. 683; Wright v. Louisiana Ice & Utilities Co., 19 La.App. 173, 138 So. 450; and Richey v. Union Paving Co., La.App., 151 So. 657.
(2). The burden of proof is upon plaintiff to establish the factual circumstances justifying the conclusion of a causal connection between injury and employment. In connection with this proposition the court approved the rejection of plaintiff’s demands in Kirk v. E. L. Bruce Co., La.App., 190 So. 840, and Lynn v. Arkansas Fuel Oil Co., La.App., 192 So. 764.
(3). The development of heart disease by a workman while engaged in his employment does not necessarily entitle him to compensation.
(4). The employer is not the insurer of his employees.
In cases of this nature courts are and should be primarily influenced to a conclusion by the opinions of medical experts. But where, as in the instant case, such opinion does not serve to justify a conclusion of causal relationship between employment and injury, the facts themselves, judged from the view of a layman, must be carefully examined in the attempt to ascertain any conditions connected with physical strain or exertion which may be reasonably concluded to have caused, accelerated or contributed to a physical breakdown.
Insofar as we are able to determine our courts have adhered to the general principle which was approved in the Nickel-berry case, supra. In the absence of evidence of traumatic injury or sudden and violent occurrences it is required that plaintiff make a showing of strenuous physical exertion or of the presence of attendant conditions such as excessive heat. This is noted by Professor Malone in his work on Louisiana Workmen’s Compensation, Section 256, page 314:
“Trauma usually associated with any strenuous employment is often sufficient to bring about the disability or death of an employee suffering from a diseased heart or high blood pressure. Complications in proving causation arise from the fact that the natural progress of pre-existing heart infirmities can produce disability at any moment regardless of any outside influence. However, it is well settled in medical science that exertion and heat characteristic of heavy physical duties can cause severe injury to a weakened heart or blood vessel. Becton v. Deas Paving Co., Inc., 3 La.App. 683; Wright v. Louisiana Ice & Utilities Co., 19 La.App. 173, 138 So. 450; Ozbolt v. Weber-King Mfg. Co., La.App., 193 So. 383. The issue of causal relation is now usually resolved into the sufficiency of alleged exertions and overheating to injure the heart or blood vessel in the specific case. Stoking a furnace, Ozbolt v. Weber-King Mfg. Co., supra; Becton v. Deas Paving Co., Inc., supra; Henderson v. E. L. Dalton & Co., La.App., 47 So.2d 111; carrying ice, Wright v. Louisiana Ice & Utilities Co., supra; operating a drag line, Richey v. Union Paving Co., La.App., 151 So. 657; Hemphill v. Tremont Lbr. Co., 209 La. 885, 25 So.2d 625; sawing wood, Brister v. Miller, La.App., 178. So. 284; carrying cross ties, Jackson v. Travelers’ Ins. Co., 180 La. 43, 156 So. 169; cooking glue, Murray v. Mengel Co., La.App., 9 So.2d 818; and boiler making, Hester v. Tremont Lbr. Co., La.App., 15 So. *888 2d 94; have all been held to have aggravated the employee’s pre-existing weakened condition.”
We find what we regard as an authoritative guide to the resolution of the instant case in the opinion of Mr. Chief Justice Fournet in Hemphill v. Tremont Lbr. Co., cited supra, 209 La. 885, 25 So.2d 625, 627:
“We think the overwhelming preponderance of the evidence shows that the strain on Hemphill’s heart because of the strenuousness of the work and the heated conditions under which he was working were the motivating causes of his death. This was the unqualified and unanimous conclusion of all three of the plaintiff’s expert witnesses and their testimony was not in any way weakened or refuted by the defendant’s medical experts.” (Emphasis supplied.)
Examining the established facts of the instant case, in the light of the above pronouncement, we do not find that plaintiff’s work at the time of the alleged accident involved strenuous physical exertion of a nature which would indicate any sort of strain, heavy lifting or other strenuous effort, and certainly there is not the slightest evidence that plaintiff was suffering from excessive heat, or other outside conditions which would have affected his physical condition.
Our most recent consideration of a case involving a heart affection was in the case of Sepulvado v. Mansfield Hardwood Lumber Co., La.App., 75 So.2d 529, in which we found that plaintiff’s decedent had been engaged in exceedingly strenuous physical exertion, under exposure to unusual heat, which factors, according to the preponderance of the testimony of the medical experts were a direct cause of the disturbance of the plaques of the circulatory system and consequent formation of an occlusion. No similar facts have been established in the instant case.
We think plaintiff has failed, first, to establish the actual occurrence of the heart attack while engaged in the course of his employment, and, second, any causal connection between his work and his resultant physical disability. It follows that the judgment appealed from is correct and, accordingly, it is affirmed at appellant’s cost.