# Minnie Hilliard, Appellee, v. Chicago City Railway Com= pany, Appellant.

## Gen. No. 15,867.

1. VERDICTS—*when not disturbed.* A verdict will not be set aside as against the weight of the evidence unless clearly and manifestly so.

2. VERDICTS—*when not excessive. Held,* in an action on the case for personal injuries, that a verdict for $3,000 was not excessive where it appeared that the plaintiff as a result of the accident sustained a severely bruised leg, with resulting swelling and pain, and that as a result permanent impairment of the leg occurred.

3. DAMAGES—*what does not preclude right to recover.* The plaintiff in an action on the case for personal injuries is not precluded from the right to recover all damages merely because a dormant disease has been aggravated by the injuries sustained.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed October 4, 1911.

B. F. RICHOLSON and WATSON J. FERRY, for appellant.

BOWLES & BOWLES, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

This is a suit to recover for personal injuries. The judgment against appellant was for $3,000. Two reasons are assigned why the judgment should be reversed. The first is, "because the verdict is against the overwhelming weight of the evidence," and the second is, "the amount of damages awarded by the verdict is grossly excessive."

Appellee was a married colored lady, thirty-eight years old, weighing two hundred fifty pounds, engaged

Hilliard v. Chi. Ry. Co., 163 Ill. App. 282.

at the time of the injury in the business of hair dress-
ing and scalp treating. She was injured in her right
leg between the ankle and the knee, while attempting
to board an electric street car of the appellant at or
near the intersection of State and 39th streets in the
city of Chicago, on the 13th day of September, 1907,
at about half past three in the afternoon.    The car
upon which she was injured was a north bound, Indi-
ana avenue car, which, on the day of the accident, was
running on State street from 51st street to 39th street,
where it was switched east to Indiana avenue, and was
in charge of servants of appellant.    The car had
come to a stop a little south of the south line of 39th
street for the purpose of giving the conductor time to
turn a switch, so as to permit the car to turn to the
east on 39th street.    This was the regular place for
the car to stop to receive and discharge passengers.
The switch there was operated by a lever about three
feet and six inches long, placed at right angles with
the north and south car track on State street, and was
attached at its west end to the mechanism of the switch
by a hinge that was located from twelve to thirty inches
east of the east rail of the north and south car tracks
on State street.    The side of the car projected east of
the east rail of the car track from twenty-four to
twenty-seven inches, and the extreme eastern end of the
switch bar was not to exceed four feet east of the
east side of the car.    This switch was operated by
raising the east or outer end of the switch bar or lever
from twelve to seventeen inches from the surface of
the pavement.    When the switch was not being oper-
ated, no part of the switch bar or lever was above the
surface of the street.    As soon as the car stopped
there at the time of the injury, the conductor
alighted from it and raised the east end of the switch
bar, turned the switch and signaled the motorman to
go ahead, holding the switch bar up as high as it would
go in the meantime.    The motorman started the car,

and almost immediately thereafter, and while the conductor was still holding up the switch bar, appellee fell to the ground near to the side of the car, her feet on or near the west end of the switch bar and her head to the north. The right leg of appellee was there injured. As to just how appellee came to fall, and whether her fall was caused by reason of the negligence of the servants of appellant who were in charge of the car, or by reason of her own negligence, the evidence is conflicting. The act of those operating the car in stopping at at the usual place for discharging and receiving passengers was an invitation to those who were there and desirous of taking that car to board it, and it was the duty of those in charge of it to see to it that persons who were attempting to enter it, while it was stopped, had reasonable time to do so in safety before starting the car. A failure in the discharge of that duty would be negligence which would not be excused by saying they did not see any one there, providing such person, so attempting to board the car, was in plain sight of those operating it. On the other hand, persons desiring to board the car should do so while it is standing, and if they attempt to do so while it is in motion, and are thereby injured, the fault is their own. The conductor who was in charge of the car, and who directed its movements, was a witness for appellant, and testified that, as he left the car to turn the switch, he looked and did not see any one near the car, and did not see appellee at all, until after the car started. He also testified that it was ten seconds from the time the car stopped, until he had raised the switch bar and told the motorman to go ahead. The motorman testified it was a few seconds. The conductor further testified, "I said to the motorman all right and he started. *At the time he started a lady was trying to get on while the car was in motion* * * * The first thing I seen her I seen her board the car after it had gone three feet and then

she fell.'' The motorman testified that he had gone six feet before he noticed appellee. ''I did not see the lady before she took hold of the car. I didn't know how long she had hold when I first saw her.'' Other witnesses of the defendant variously testify that appellee attempted to board the car just as it started and just after it started. Appellee testified, in substance, that, when the car came up and stopped, she was standing there waiting for the car, and was about a foot and a half south of the switch bar and just far enough from the car, so it would not strike her; that as soon as the car stopped, she immediately attempted to board it; that she took hold of the hand hold on the car with her left hand and placed her left foot on the lower step; that at that time the conductor was raising the switch bar; that as she was reaching for the other hand hold with her right hand, the conductor gave the signal to go ahead, and the car started with a jerk; that she held on with her left hand and was thrown forward, her right leg being caught between the switch bar and the step of the car. The husband of appellee testified, in substance, that when the car approached 39th street, he and appellee were standing between a foot and a half and four feet south of the switch bar; that when the car came up, it stopped with the front end opposite where they were standing; that the front part of the front entrance was opposite the switch bar and the step to the south part of the front entrance was south of the switch bar, and extended from twenty-four to twenty-seven inches east of the east rail of the track; that appellee, when the car stopped, took hold of the hand hold and placed her left foot on the step and started to raise herself, when the car moved suddenly and she lost her balance and fell to the pavement with her feet across the switch bar six or eight inches; that he could not see whether her right foot was caught in the switch bar, but when the car started, it pulled her body forward, while her feet

seemed to remain stationary; that when the conductor gave the signal to go ahead, appellee was in the act of leaving the ground to get on the car; that after appellee started to step up, the conductor stepped down right at the switch and picked it up and said, ''go ahead;'' that appellee's dress almost touched the conductor, as he stooped over to raise the switch bar; that when she fell, the lower part of her dress rolled upon her arm. Both appellee and her husband testified to injuries received by appellee at the time she fell. Each count of the declaration, except the last count, charges that the injuries received were produced by her leg being caught between the switch bar and the car step. The last count charges that appellee was thrown violently upon the ground and thereby received her injuries. All the counts charge that the car was started while she was attempting to board it.

The jury heard all the evidence and saw and heard all the witnesses while they were giving their testimony, and were called upon to determine the credibility of the various witnesses and the weight that should be given to their testimony, and whether the appellee had proven her case, as laid in her declaration, by a preponderance of the evidence. In the discharge of that duty they found the appellant guilty. After a careful scrutiny of the record, we are unable to say that the verdict is not in accord with the weight of the evidence. If the testimony of appellee and her husband is true, and the jury evidently believed it to be so, then the servants of the appellant were guilty of the negligence charged in the declaration; the appellee was in the exercise of due care for her own safety and was injured in the manner charged in the declaration. Counsel for appellant insists that the story told by appellee and her husband is so improbable as to be unbelievable; that it describes a physically impossible occurrence. We see no inherent improbability in their testimony. In brief, their testimony is that they

were at the place where the north bound cars usually stopped to receive passengers, waiting to take the car; that the car stopped in front of them; that appellee attempted to board the car while it was standing, and when she was in the act of so doing the car started with a jerk, and she was thrown to the ground and injured. This seems to us to be a chronological statement of what might very easily occur. As to how the injury to appellee's leg was inflicted the husband does not testify, but appellee says, ''I know my right foot caught between the step and the switch bar, because I felt it. There was pain in connection with that. It felt as though—that my leg was almost cut in two by the edge of the switch bar and the step as the car moved * * * * I could feel the step slide and the cutting of the bar over in my leg * * * * I fell when my foot got caught in that bar, well I felt an awful severe pain * * * * the car dragged me the full length of my arm and pulled me across the switch bar; pulled my foot. It got caught between the switch bar and the step and pulled me across there the full length of my arm, my feet was lying across the switch bar. Both feet were south of the switch bar when I let go.'' It is apparent from the testimony of appellee that she does not know just how the injury itself was inflicted, but that she testified as to her beliefs, conclusions and opinions, based on what she felt at the instant of her fall. That she was caught in some way and fell and was there injured is made clear by her testimony, even though the exact manner in which she received her injuries is left somewhat uncertain. Whether she was injured, as charged in the last count of her declaration, by the fall, or, as charged in the other counts, by having her foot caught between the car step and the switch bar, is immaterial, so that it was caused as charged in some one of the counts of the declaration. If there is any part of the testimony in this case that is inherently improbable, it is the testimony of the ser-

vants of the defendant, in which they say appellee was not there when the car stopped or in sight when it stopped, in view of their further testimony that in a few seconds she, a woman weighing 250 pounds, was there hold of the car attempting to board it, there being no proof that she was either ethereal or possessed of remarkable agility.

On the question of the amount of damages appellee sustained, the proof tends to show that her right leg was severely bruised, although the skin was not broken; that it began to swell immediately, between the knee and the ankle, and continued to swell for some time and turned black and blue; that the pain was so severe she could not sleep, and that the pain was continuous up to the time of the trial, but not so severe; that on October 7th, about three weeks after the injury, she was taken to the hospital where she remained about six weeks; that at that time the leg was swollen its entire length, and she could not raise it.    Dr. Guy A. Gowan, a witness for appellee, testified that the swelling above the knee was a necessary condition to the condition below the knee, and was caused by the bruise she received below the knee; that the blood clotted and then liquified and had to be drained off; that this was done by making an incision through the skin and then forcing a blunt instrument into the tissues to a depth of four to six inches; that at least six of such openings for drains were made in her leg, one below the knee and five above the knee.    Appellee testified that before the injury she was making from $50 to $65 per month above expenses in the business of hair dressing and scalp treating; that she was totally disabled from pursuing that business from the 13th day of September, 1907, until May 1, 1908, and partially disabled since then; that the efficiency of the leg was still impaired at the time of the trial.    Dr. Gowan testified that such impairment is likely permanent. The evidence further shows that appellee became lia-

ble to pay to one of her doctors $300, and that $300 is a reasonable, usual and customary fee for the services he rendered.   Dr. Dwight Jennings of St. Louis, a witness called by appellant, testified that he treated a lady by the name of Minnie Robinson at 1226 Spence street, St. Louis, on January 26th, 28th, 29th, 30th, 31st, and February 2nd and 5th, 1903, for gonorrhea and complications, and that he believed appellee was the lady; that she was in bed and would weigh about 160 pounds; that she was not cured when he ceased treating her; that the tendency of that disease is to retard or impair the return circulation of the blood throughout the veins of the patient, and to cause swelling in one or both legs at about the place where the circulation is obstructed, but when asked whether, in a case like the one at bar, he would attribute the swelling above the knee to the injury below the knee, or to the after effects of the conditions he found in the lady in St. Louis, he failed to express an opinion. Appellee denied that she ever was treated by Dr. Jennings for gonorrhea and that she ever had that disease, but admitted that Dr. Jennings had treated her for displacement of the womb.   The only legitimate purpose for which appellant was entitled to the testimony of Dr. Jennings was to show that the swelling, particularly above the knee, was caused by appellee's diseased condition and not by the injury.

No reason is, or, in our opinion, can be, suggested why a person who is afflicted by some dormant disease that may or may not ever cause them trouble, but which, by some injury caused by the negligent act of another, is caused to become active or virulent, should be deprived from recovering all damage they may sustain by reason of such negligent act, including such damages as are sustained by causing a dormant disease to so become active.

Under the facts in this case, it was the province of the jury to determine whether the accident was caused

by the negligence of the appellant, or by the want of due care on the part of appellee, and in case they found it was caused by the negligence of the appellant and that the appellee was in the exercise of due care for her own safety, then to assess the damages of appellee.

We are of the opinion that, under the evidence in this case, the jury were warranted in finding the appellant guilty, and the majority of the court are of the opinion that the jury were justified by the evidence in fixing the damages at the sum of $3000.

The judgment of the court is, therefore, affirmed.

*Judgment affirmed.*