## DANIELS v. UNION OIL MILL, Inc.
### No. 5062.

Court of Appeal of Louisiana.
Second Circuit.
June 4, 1935.

Madison, Madison & Fuller, of Monroe, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

DREW, Judge.

Plaintiff instituted this suit for compensation for the death of her husband who died while in defendant's employ. She contends that her husband's death was caused from becoming overheated and by overexerting himself while performing his regular duties for defendant.

Defendant filed an exception of no cause of action, which was overruled. It then answered denying liability and denying that deceased came to his death by any accident, but averred he died from natural causes.

The case was tried below, resulting in judgment for defendant, rejecting plaintiff's demands. She has perfected an appeal to this court.

The exception of no cause of action is not urged here.

Deceased had been in the employ of defendant for ten years. His duties were those of yard man at the mill site, which required him to keep the yard clean by mowing the grass, picking up trash, and cutting weeds. He would also at intervals go through the mill and gather up empty Coca-Cola bottles left there by the employees. The work he was performing was unusually light, and there was nothing strenuous about it, nor was any of his work of a nature to cause much exertion.

On August 2, 1934, deceased was married in Gibbsland, La., to plaintiff herein, and on the morning of August 3d, he returned to his work about 7 o'clock a. m. Some of his fellow employees saw him performing his regular duties in the millyard about 9 or 10 a. m. He was next seen about 1:30 p. m. when he was found dead in one of the buildings in the yard. When found, although he was dead, he

was in a sitting position in a corner of the building. One witness testified that he saw deceased about 9 o'clock in the morning sweeping in the yard; and that he was then "sweating" and his clothes were wet. This was not unusual for one working in the sunshine on an August day. When he went to work and when last seen by any one, he was apparently in good health. The day was not shown to have been unusually warm for that time of the year. He was seen by a fellow employee between 9 and 10 o'clock upstairs in the mill building gathering up empty Coca-Cola bottles, and there was nothing unusual about his appearance at that time. He was not seen again until he was found dead.

■ There is no proof in the record to show the cause of the death of deceased. No doctor was offered who would even express an opinion as to the cause. There was likewise no testimony to show that deceased was not in good health when he went to work at the mill on August 3d. In fact, the only evidence in the record is that he was found dead, without anything unusual having occurred to account for his death. Why he went into the building and took a seat in the corner, no one knows It is possible he became too warm and went in to get out of the sunshine. It is likewise possible that he had been up most of the night before, became sleepy, took his seat and went to sleep, never again to awake. For us to find that deceased died of excessive heat from overexertion, we would have to do so without any evidence upon which to base such a finding. It is barely possible such was the case, but, as we have said, we cannot decide cases upon possibilities. The law requires us to base our decisions upon evidence, and there is nothing in this record to justify a decision in favor of plaintiff.

The Louisiana cases relied upon by plaintiff are Becton v. Deas Paving Co., 3 La. App. 683; Wright v. Louisiana Ice & Utilities Co., 19 La. App. 173, 138 So. 450; and Richey v. Union Paving Co. (La. App.) 151 So. 657.

In Becton v. Deas Paving Co., the facts are entirely different from the case at bar. Plaintiff was firing a boiler and looking after an engine which was on top of the boiler. It was an extremely warm day, and he was working in a very hot place. Plaintiff climbed to the top of the boiler and started the engine, which required a great deal of strength and exercise. When he started the engine he felt a keen little pain in his side, and turned sick within a few seconds. He went to the shed and a physician was called who carried him to his home. The doctor employed by the insurance company, in that case, testified that Becton was overcome by heat from the boiler. There was no question in the case as to the cause of the injury suffered by Becton.

The facts in Wright v. Louisiana Ice & Utilities Co. are entirely different from the instant case. Wright was and had been suffering with a diseased heart, which no doubt would ultimately have caused his death. On the day of his death he was engaged in strenuous labor, that of delivering ice, and had up to the time of his death (just before the noon hour) delivered 5,100 pounds of ice in blocks weighing from 12 to 100 pounds each, with only the help of a boy. The court found from the undisputed facts that due to his physical condition Wright's death was caused by overstraining himself; the overexertion and strain causing his heart to break down.

In Richey v. Union Paving Co., this court found from the facts that Richey was and had been suffering with a diseased heart, and that due to his condition, the work he was performing, together with the heat, was too strenuous and was the direct cause of the heart attack. The facts are unlike those in the case at bar.

■■ The only remaining question for determination is one of admissibility of certain evidence. Plaintiff offered in evidence the report of an autopsy on deceased, certified to by Dr. O. L. Mengis, coroner, which was objected to for the reason it was ex parte, and there was no opportunity for cross-examination of the coroner. The objection was sustained. Of this rule, plaintiff complains. Plaintiff did not produce the coroner as a witness, which it was in her power to do. Certainly, the testimony of the coroner as to what the autopsy disclosed was the best evidence, and where the best evidence is at hand, secondary evidence is not admissible. Furthermore, defendant had the right to cross-examine the coroner in regard to his findings, a right he would have been deprived of if the report had been admitted without first placing the coroner on the stand as a witness. The ruling of the lower court was correct. The only ground upon which the coroner's report would have been admissible was to show the death, which was admitted in defendant's answer. It was not admissible to show the cause of death. Faulk v. Mutual Life Insurance Co., 160 La. 529, 107 So. 395.

We therefore conclude that the judgment of the lower court is correct, and it is affirmed, with costs.