### KIRK v. E. L. BRUCE CO.

No. 5920.

Court of Appeal of Louisiana. Second Circuit.

April 28, 1939.

Rehearing Denied May 29, 1939.

Writ of Certiorari and Review Denied July 14, 1939.

Theus, Grisham, Davis & Leigh, of Monroe, for appellant.

M. C. Redmond, of Monroe, for appellee.

TALIAFERRO, Judge.

Plaintiff, the surviving widow of Charles E. Kirk, deceased, sues to recover workmen's compensation, supporting her claim therefor by the usual allegations in such cases, to-wit: that her husband died from the effects of an accident experienced while performing the duties of his employment with defendant, who is engaged in a hazardous business. The specific cause of the accident is alleged to have been "over-exertion and undue strain in his efforts to do his work brought on exhaustion which overcame his heart."

Defendant contests the suit on these grounds, viz., that Kirk's death was not the result of an accident and did not arise out of and in the course of his employment and, therefore, is not compensable within the meaning, purview and intendment of the Workmen's Compensation laws.

From a judgment for plaintiff, defendant appealed.

The facts of the case, except the exact cause of Kirk's death, are not in dispute. He had been in defendant's employ for several years as a log loader. Daily he would leave defendant's mill in the town of Oak Grove, Louisiana, at about 6:30 o'clock, A. M., and ride on its train several miles to where logs had been assembled near the track. It was his duty to operate the machinery employed in lifting logs from the ground onto cars for transport

to the mill. This was done through control levers motivated by steam power. To manipulate the levers the feet, knees and hands were employed. It required no great amount of physical effort nor exertion to successfully load logs on the cars by the use of said machinery. It did require some skill.

The morning of Kirk's death he had every appearance of being in good health and physically sound. He danced some in his home to musical strains from a radio, left home in good spirits, boarded the log train, and, as was his custom, read the morning paper while enroute to the scene of his contemplated work. The train arrived there about 9:30 o'clock. Before beginning loading, he decided to shift the ends of the ⅝-inch steel cable used to swing the logs from the ground onto the cars. One end of this cable was attached to a steel drum, a unit of the loading machinery, while the other end, to which tongs were attached, hung from the elevated end of a crane or boom whose function it was to lift the logs when steam was applied. The cable consisted of six strands which were themselves made up of small twisted wires.

The loading tongs were attached to one end of the cable, at which there was an eye or loop. Kirk had some colored laborers remove the cable from the drum and the boom and then, with the assistance of one of these men, began to construct an eye or loop in that end of the cable which had formerly been around the drum. This was accomplished by laying the cable on a log and pressing down on it with a hammer at a point sufficiently far from the end to make up the loop when that portion is bent back. This being done, the six strands were separated by hand. Six holes were then made in the cable through which the six strands were extended. Six more holes were then made in the cable and the strands run through them from the opposite side of first entrance. This was done to assure certainty of not giving way when the weight of the lifted logs was put upon the cable.

The holes through the cable were made by the use of a steel spike some fifteen inches long, about the size of a man's thumb at the top, which tapered to a point, and a hammer weighing one and one-half pounds. Mr. Kirk personally made the holes by the use of said implements. The sharp end of the spike was put against the cable between two strands and tapped lightly until

it emerged from the opposite side. He had previously done the same thing without using a hammer. No doubt the hole was so made as to leave three strands on either side of it. It is equally certain that the spike was not driven through the cable without regard to its course of penetration. If the small wires were severed or damaged the strength of the cable to that extent would necessarily be reduced. Therefore, in performing this service, no great amount of physical exertion was required. No unusual strain was necessary to do so. During the entire work the end of the cable lay upon the log.

After the loop had been completed, Kirk directed a laborer to get a cold chisel and cut off the frazzled ends of the strands. He was then sitting on the log. Before his order could be executed, he stood erect, quivering, stated he was blind, resumed his seat on the log, instantly fell therefrom, and before other members of the loading crew, 100 yards away, could arrive, he expired.

The deceased rarely ever consulted a physician to prescribe for him. He never complained of serious ailments. All who associated with him daily believed him to be in sound physical kilter. The exact cause of his death is not proved. The doctors believe he expired from heart failure, but they do not eliminate the possibility of other causes therefor, such as cerebral hemorrhage, pulmonary phlebitis, etc., which bring on sudden death. No autopsy was held.

In view of the undisputed facts of the case, narrated above, we are unable to concur in the lower court's conclusion that Kirk's death was brought on by excessive or unusual physical exertion or by strain. In fact, the minor exertion put forth by him the morning of his death was not as much as he performed daily in operating the loading machinery, and that is conceded to have been light work.

Plaintiff cites and relies for recovery chiefly upon the following Louisiana cases: Brister v. Miller, La.App., 178 So. 284; Wright v. Louisiana Ice & Utilities Co., Inc., 19 La.App. 173, 138 So. 450; Behan v. John B. Honor Co. et als., 143 La. 348, 78 So. 589, L.R.A. 1918F, 862; McMullen v. Louisiana Central Lbr. Co., 2 La.App. 773.

The facts of the Brister case are clearly not on all-fours with those of the case at bar. It was definitely found in that case that death was caused from heart failure, superinduced and accelerated by unusual

and excessive strain while deceased was overheated. The court said [178 So. 285]: "In this case it is manifest that the heart failure that proximately caused the death of the deceased was brought on or aggravated by the strain and exertion in trying to pull the saw through the tree at a rapid rate of speed and at a time when deceased was overheated. Under these circumstances and the cited cases, the case is compensable."

The facts of the Wright case are wholly unlike those conceded to exist in the present case. The deceased employee in that case was an iceman. He delivered ice each morning to a large number of his employer's customers. It required heavy lifting and considerable physical exertion otherwise to efficiently discharge his duties. The court found that he died of heart ailment, likely of long duration and of a progressive character, caused by over-exertion. He fell in a kitchen while making a delivery. He was very warm, was perspiring profusely, his clothes were wet therefrom, indicating definitely that his body was unusually heated.

The Behan case simply holds that [143 La. 348, 78 So. 590], " * * * the fact that a person was already afflicted with a dormant disease that might some day produce physical disability is no reason why he should not be allowed damages or compensation for a personal injury that causes the disease to become active or virulent and superinduces physical disability. See Hilliard v. Chicago City Railway Co., 163 Ill.App. 282; Larson v. Boston Elevated Railroad Co., 212 Mass. 262, 98 N.E. 1048."

The McMullen case turned upon the same legal principles announced in the Behan case.

Daniels v. Union Oil Mill, Inc., La.App., 161 So. 614, decided by this court in 1935, is quite similar in most respects to the present case. We held therein as follows: "Widow of mill site yardman who was found dead on afternoon of an August day held not entitled to recover for his death on alleged ground that husband died from excessive heat or from overexertion, where there was no proof to show cause of death, and deceased's work was unusually light and not such as to cause much exertion."

The principle announced in this case is not new. It has prevailed in this state since the adoption of the Workmen's Compensation Law in 1914, Act No. 20. Many other cases supporting same could be cited.

As has often been said by this and other appellate courts of the state, the plaintiff in a compensation case carries the burden of proof in the same manner as he does in other civil cases. In this case, before plaintiff would be entitled to recover, it devolved upon her to prove that her husband's death was directly due to over-exertion physically or to unusual strain superinducing the collapse of his heart. Stockman v. Tremont Lumber Co., La.App., 155 So. 30; Tullis v. United Carbon Co., La.App., 142 So. 307.

She has not proved that he died of any heart ailment nor has she proved that his death was directly or indirectly due to any of the causes alleged by her.

The deceased died about 9:30 A. M., April 14, 1937, in the open air. The mornings of that time of the year are generally cool and pleasant. The sunshine is not oppressive. He had not been exposed to heat on the trip on the log train. Nothing had happened that was unusual to his employment.

In view of the well established facts of the case, we can perceive of no causal connection whatever between Kirk's death and his employment. Death would most probably have overtaken him when it did regardless of where he was or what he was doing. Some vital organ gave way suddenly and the end came.

We are of the opinion that the judgment appealed from is not supported by either the evidence in the case or the law applicable, and it is therefore reversed, annulled and set aside; plaintiff's suit is dismissed at her cost.