Cornelia McGowen Lampkin, the widow of Frank Lampkin, in her own behalf and in behalf of her minor children, Percy Griffin, Rosa Jane Griffin and Charoline Griffin, children of her previous marriage to Charles Griffin, deceased, sued Kent Piling Company, Inc., under the Workmen's Compensation Act, Act No. 20 of 1914, as amended, to recover compensation at the rate of $7.88 per week for a period of 300 weeks, plus $65 for burial and contingent expenses in connection therewith.
She alleged that on or about March 22, 1940, her husband, Frank Lampkin, suffered an accident within the meaning of the Workmen's Compensation Act, resulting in his death which was due either to heart disease or cerebral hemorrhage caused directly by overexertion or excessive heat. Alternatively and in the event that the Court should find that Lampkin was suffering from a pre-existing heart condition, then she averred that the excessive heat and severe strain were the activating or contributing cause of his death.
By supplemental petition the plaintiff increased her demand for compensation from $7.88 per week to $8.19 per week and made Consolidated Underwriters, the alleged workmen's compensation insurer of the named defendant, a party defendant.
The District Judge found that Frank Lampkin's death was the result of an accident within the meaning of the Act and awarded compensation to the plaintiff and *Page 77 
against the defendant, Kent Piling Company, Inc.
No mention is made in the judgment or in the Judge's opinion of Consolidated Underwriters and the record is not clear as to why judgment was not rendered against it also. However, since the plaintiff has not complained of this omission, the reason therefor cannot be considered by this Court.
The defendant, Kent Piling Company, Inc., appealed from the adverse judgment. The only questions before this Court are (a) whether the deceased, Frank Lampkin, suffered an accident in the course and scope of his employment within the meaning of the Workmen's Compensation Act, and (b) if so, whether or not the award is correct, particularly as regards the payment of interest on the installments.
Frank Lampkin was 42 years old when he died. He had always enjoyed good health and there is no indication that he was suffering from heart disease or high blood pressure prior to his death. On the day of his death he reported for work at 12 noon. About 2:30 P.M. that day he was stricken while in the discharge of his duties as fireman for Kent Piling Company, Inc., and died immediately. His duties required him to fire two boilers. After reporting for work he cleaned out the fire box, removing the clinkers therefrom, which the record shows were red hot when removed. This required from three to five minutes. Thereafter, he ascended a stairway about six or seven feet above the ground and walked upon a platform which was partially enclosed and was covered with a low-hanging roof. He fed wood shavings into the furnace, using a large shovel for this purpose. Simultaneously, sawdust was fed into the furnace from the defendant's sawmill through a chute. He was standing on the platform about three feet from the open door of the furnace with the shovel in his hand when stricken. The record does not show the temperature on the day of the accident at the point where he was standing, but when the case was tried on July 8, 1946, it was 110° F. The presumption is, of course, that the temperature in March was lower than it was in July. However, the evidence shows that when Lampkin was stricken he was perspiring. There is some conflict in the testimony of the witnesses as to whether or not he perspiring freely. Some witnesses testified that his body and clothing were wet with perspiration above his belt line; whereas, Mr. H.S. Dunn, plant superintendent for Kent Piling Company, Inc., testified that "It was a cold day and he just was perspiring a little, if any."
The evidence shows that the immediate cause of Lampkin's death was coronary sclerosis, which, we understand, is a narrowing of the blood vessel supplying the heart muscle. If this results in closure, then death results immediately; otherwise, the stricken person often survives.
Dr. L.L. Ricks of Amite, the Parish Coroner, signed the death certificate and stated that the cause of Lampkin's death was coronary sclerosis. According to Dr. Ricks, a person may have this disease unknown to him. In his opinion, any kind of exertion or overheating of a person with this disease would cause immediate death. Dr. Sam Hobson of New Orleans, a specialist in heart diseases, attended the trial, listened to all the testimony and testified on behalf of the defendant. He expressed the opinion that Lampkin died of a coronary disease, probably a thrombosis, and that overheat was not a contributing cause of Lampkin's death "unless it was extremely hot in the place, say around 110° or more." On cross-examination he admitted that exertion or excessive heat could cause an occlusion and that "exertion is bad" for anyone having heart trouble.
Drs. W. Shewen Slaughter, James R. Godfrey and John T. Lewis, reputable physicians and surgeons, all of Baton Rouge, executed affidavits which were filed in the record as their testimony. Three almost identical hypothetical questions were propounded to these Doctors and they all stated that excessive heat and exertion could and probably would contribute to the death of a person suffering from heart disease. If the afflicted person had coronary sclerosis and overexerted himself or became overheated, just prior to death, these Doctors stated unequivocally that such conditions either caused or contributed to his death. *Page 78 
[1] In Murray v. Mengel Co., La. App., 1942, 9 So.2d 818, 821, this Court said:
"It is now well established in our jurisprudence that, if excessive heat, heavy lifting or straining, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition, the legal requirements are present to constitute an accident, and the injury is compensable. Wright v. Louisiana Ice 
Utilities Co., 19 La. App. 173, 138 So. 450; Ozbolt v. WeberKing Mfg. Co. et al., La. App., 193 So. 383; Nickelberry v. Ritchie Grocer Co. et al., 196 La. 1011, 200 So. 330."
[2] The District Judge found that the duties Lampkin was performing when stricken, and the excessive heat in the boiler room, contributed to his death or brought on the heart attack. We find no manifest error in his finding; in fact, it is our opinion that the combination of the strain, exertion and excessive heat brought on the fatal heart attack. Lampkin may have been suffering from heart disease before the date of his death. If so, his dependents would nevertheless be entitled to recover compensation because the aforesaid conditions certainly aggravated his condition and accelerated his death.
Learned counsel for defendant-appellant relies upon Daniels v. Union Oil Mill, Inc., La. App.2d Cir., 1935, 161 So. 614; Kirk v. E. L. Bruce Co., La. App.2d Cir., 1939, 190 So. 840, certiorari denied; Nickelberry v. Ritchie Grocer Co., 1940,196 La. 1011, 200 So. 330; Mitchell v. Employers' Liability Assurance Corporation, Ltd. of London, La. App.2d Cir., 1941,5 So.2d 152, and Siscoe v. Cooley et al., La. App.2d Cir., 1942, 9 So.2d 313, certiorari denied. In each of these cases the demands of the plaintiff were rejected.
In our opinion these cases are distinguishable from the instant case.
In Daniels v. Union Oil Mill, Inc., supra, the plaintiff contended that her husband's death was caused by becoming overheated and by overexerting himself while performing his regular duties for defendant. The Court found, however, that the day was not shown to have been unusually warm for the time of year and there was no proof in the record to show the cause of the death of the deceased.
In Kirk v. E. L. Bruce Co., supra, the claim was also made that the deceased's death was due to overexertion and undue strain in his efforts to do his work which brought on exhaustion and heart failure. The testimony, however, showed that the deceased, who was apparently in good health and whose duties were of a supervisory nature, had not overexerted himself. When he was stricken, he was seated on a log giving instructions to workmen under him. The Court stated that the minor exertion by him the morning of his death was less than his customary exertion daily in operating loading machinery which was concededly light work.
In Nickelberry v. Ritchie Grocer Co. et al., supra, the plaintiff did not allege or claim that the falling of a beam or the lifting of heavy objects at the time of the alleged accident caused injury to his heart or accelerated a pre-existing heart condition. After reviewing the medical testimony, the Supreme Court said [196 La. 10, 11, 200 So.2d 333]:
"All the physicians who testified in the case concur in the conclusion that plaintiff's condition is the result of the progress of the orginal disease, the beginning of which possibly dates back a year or more.
"The case therefore presents a situation where the plaintiff admittedly is suffering from a disease of the heart. When the disease began, what was its origin, and the rapidity with which it has progressed, are all matters of pure speculation. The mere fact that a workman develops heart disease while employed by another does not entitle him to compensation. The employer is not the insurer of his employees. There must be an accident to furnish the basis of any such claim, that is to say, something sudden, undesigned or unexpected and that accident must either cause or aggravate the disease which is the cause of the disability."
In Mitchell v. Employers' Liability Assurance Corporation, Ltd., of London, supra [5 So.2d 153], the deceased's death was caused by the rupture of a duodenal ulcer of a progressive nature and of long *Page 79 
standing. On the day of the alleged accident the deceased was sitting down near a work bench at the site of his employment and complained of pain in his stomach. He was given a dose of soda and possibly some medicine and then sent in an ambulance to get his tools. After reaching the place where his tools were kept, he was severely stricken with a stomach ailment. An ambulance was again called, and he was carried to the first aid department, which sent him to a charity hospital, where he was operated on and later died. The Court observed that according to the medical testimony the rupture did not occur until a short time before the ambulance was called to carry the deceased to the charity hospital; that, moreover, the medical testimony was convincing that whenever a rupture occurs it causes immediate shock and severe pain and that it would have been impossible for deceased to continue any kind of work after such an attack. Therefore, the Court said it is certain that the deceased did not receive an injury while working for his employer on the morning of the alleged accident. However, the Court recognized the rule that "If the rupture had occurred while deceased was in a strained position prying off a plank or while he was carrying a heavy piece of timber, the doctrine laid down in the case of Fleda Jackson v. Traveler's Insurance Company, La. App., 151 So. 790; Id., 180 La. 43, 156 So. 169, and Renfrow v. Caddo, Parish Police Jury, La. App., 155 So. 291, and other cases holding the same might apply; but since the rupture did not occur at such a time they are not applicable."
In Siscoe v. Cooley et al., supra [9 So.2d 314], it was contended that Otis L. Siscoe, plaintiff's husband, died while in the discharge of his duties as an employee of Monroe Steam Laundry. He was 56 years old and employed as an engineer with the Laundry. His duties were primarily supervisory. However, during the day on which he was stricken he had done some manual labor such as removing rust from a boiler and painting. Shortly before 2 o'clock he ceased painting, walked into a room and ten minutes later was found in a helpless condition, lying on the floor next to the marking machine. He breathed deeply three times and then expired. A physician who arrived a few minutes later concluded that the deceased died from heart disease. In denying the plaintiff compensation the Court said that it did not appear that the decedent exerted any physicial efforts in connection with the employment which could have aggravated the heart ailment and accelerated his death. He was performing no heavy work and it was not clearly shown that he endured excessive heat while discharging his duties. However, the Court recognized the rule that "if excessive heat, or heavy lifting, or straining, although usual and customary, causes or contributes to a physical breakdown or accelerates its happening, the legal requirements necessary to constitute an accident are present and such cases are compensable." Compensation was denied because there was no causal connection between the employment and the death.
[3] The record shows that Cornelia McGowen Lampkin and Frank Lampkin were legally married and that the latter was supporting his three stepchildren in a home common to all of them. Percy Griffin was born on October 8, 1922 and, therefore, became 18 years old on October 8, 1940. Rosa Jane Griffin was born on August 7, 1924 and was married on October 6, 1941. Charoline Griffin was born on August 24, 1926 and was married on October 6, 1942. Under the Workmen's Compensation Act a child's dependency ceases when that child reaches the age of 18 years unless he is physically or mentally incapacitated from earning. Section 8, subd. 2(D). Act No. 242 of 1928, p. 359. There is no evidence of physical or mental incapacity of Percy Griffin. Hence, he ceased to be a dependent on October 8, 1940. The marriage of a dependent also terminates payments to such dependent. Section 8, subd. 2(F). Hence, Rosa Jane Griffin could not be considered a dependent after October 6, 1941 and Charoline Griffin could not be considered a dependent after October 6, 1942.
"Payment to such dependents shall be computed and divided among them on the following basis. *Page 80 
"1. If the widow or widower alone, thirty-two and one-half per centum of wages.
"2. If widow or widower and one child, forty-six and one-quarter per centum of wages.
"3. If widow or widower and two or more children, sixty-five per centum of wages.
"* * *." Section 8, sub. 2(E)
The plaintiff's wages were $12.60 per week. Therefore, the widow is entitled to recover for herself and for the use and benefit of her children $8.19 (65% of $12.60) per week from March 22, 1940, until October 6, 1941, and $5.83 (46 1/4% of $12.60) per week from October 7, 1941, to October 6, 1942, and for herself alone $4.10 (32 1/2% of $12.60) per week from October 7, 1942, during a maximum period of 300 weeks from March 22, 1940. Each of said installments shall bear interest at the rate of 5% per annum from its maturity until paid. The widow is also entitled to recover $65 for burial expenses. As this finding is slightly different from the judgment of the District Court, the said judgment is amended accordingly. As thus amended, the judgment is affirmed at the cost of defendant-appellant.
Judgment amended and affirmed.
ELLIS, J., recused.