75 So.2d 529 (1954)
Mrs. Mary Frances SEPULVADO, Plaintiff-Appellee,
v.
MANSFIELD HARDWOOD LUMBER COMPANY, Defendant-Appellant.
No. 8225.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1954.
Fraser & Fraser, Many, for appellant.
Godfrey & Edwards, Many, for appellee.
AYRES, Judge.
There was judgment in favor of the plaintiff individually and for the use and benefit of her eleven-year old minor daughter for compensation as the result of the death of the husband and father, Jesse Sepulvado, against defendant as Sepulvado's employer, in the sum of $23 per week for a period of 300 weeks, dating from his death September 28, 1953, and for funeral expense in the sum of $250.
On the aforesaid date and for several months prior thereto, decedent was employed by the defendant as a log cutter. Plaintiff alleged and the evidence showed that on said date decedent, a large man approximately six feet tall and weighing 200 pounds, was cutting logs with a crosscut saw for the defendant at Blue Lake in the Sabine River bottom in Sabine Parish, Louisiana; that he had been cutting hardwood timber all that morning; that after completing the cutting of a large oak tree about noontime, Sepulvado and his partner stopped possibly thirty minutes for lunch, after which they began sawing another hardwood tree, when, a few minutes later, Sepulvado was stricken with a severe pain in the right side of his chest, forcing him to discontinue his work and causing him to lie down for several minutes. This created serious concern for his welfare among his *530 fellow employees, who suggested they take him to a doctor. Saying that the pain had left him, the offer was declined and he returned to work. Soon thereafter the excruciating pain reoccurred. He was then carried some ten or twelve miles to a clinic at Zwolle and died about 3:30 P. M. of the same day. The same evening an autopsy was performed and a diagnosis of death from coronary thrombosis occurring during decedent's working hours was made.
It was further alleged and established that the timber that decedent had completed sawing was a large oak tree, which, with some gum, was the kind and character of timber worked during the day. This work required great physical exertion and effort on the part of the laborers. The weather was extremely hot and dry. The official temperature as recorded by the Shreveport Weather Bureau reached 101 during the day. Deceased, in the performance of his labor, was directly exposed to the sun and heat.
The contention of plaintiff presenting the principal issue herein to be determined is that decedent's death, due to a condition diagnosed as coronary thrombosis, was caused, precipitated and brought about by deceased's strenuous physical exertion and strain and exposure to unusual heat occasioned by his labor. Defendant, however, contended that the decedent died of natural causes, neither precipitated nor brought about by his employment.
The material facts are not in dispute. From a judgment rendered in plaintiff's favor, defendant has appealed and brought the matter before us for review.
The issue presented for decision is the question of causal connection of Sepulvado's employment and his death, as to whether his death, due to coronary thrombosis, was caused, precipitated and brought about by his strenuous physical exertion and strain and exposure to unusual heat occasioned by his work.
On the day of his death, Sepulvado arose early, as was his custom, and was apparently in good health, jolly and in good spirits as he was conveyed with nineteen others to his employment. He was fifty years of age. It was unknown as to when he had ever previously sought medical attention.
For a reversal of the judgment, defendant contends that the court below had before it a mere question of the application of the Compensation Law of Louisiana to the factual situation recited hereinabove and contended that an error was made in said application in the light of the medical evidence presented in this case. Drs. O. L. Sanders, S. W. Boyce and Frank T. Dienst, Jr., testified on behalf of the plaintiff. The defendant's experts were Drs. Loyd H. Murdock and M. D. Hargrove.
Dr. Sanders testified that one of the accepted causes of coronary thrombosis is pathological changes in the coronary arteries in which there is formation of atheromatous plaques and in which there is blood vessel formation deposits crystallized in the wall of the arteries, with the resulting narrowing of the lumen of the arteries, which is the opening in the blood vessels through which the blood flows. In the formation of the occlusion or thrombosis, there is hemorrhaging from capillaries in the wall of the coronary artery, causing a rupture in the lining thereof and the formation of a blood clot or thrombus. This stops the blood supply to that portion of the heart muscle which receives its blood supply from that portion of the artery.
Dr. Boyce further explained that the hardening of the arteries means that the normal elastic wall of the arteries is replaced by deposits of calcium, thus hardening the arteries as well as reducing their openings for the blood flow. As this condition increases, the muscles beyond this constricted area fail to get sufficient blood to supply the necessary oxygen, producing a condition known as anoxia or ischemia, the former designating a lack of oxygen and the latter a lack of blood. He says that under stress and strain, excitement and extreme exercise, resulting in more rapid heart beat and folwing of blood, this calcium plaque may be broken or shaken loose from the walls of the arteries, flow *531 down and congest the blood stream and stop up the arteries. Another condition may arise in connection with calcium plaques in the blood stream, accounted for by an abscess forming around the substance which, under stress and strain and hard beating, will rupture and close the artery. Also where the calcium plaque is embedded in the wall of the small arterioles, very small arteries, supplying the wall of the artery, come out of the lumen of the artery and go around this calcium plaque, which plaque, with its gradual increase in size and under stress and strain of severe exercise, cuts these small arteries where it impinges over the edge of the deposit, causing a hermorrhage and the formation of a blood clot, which may close the artery.
Dr. Dienst's testimony is in accord with that of Dr. Sanders and Dr. Boyce as to the pathology of coronary thrombosis.
In the report by Dr. S. D. Cummins on the autopsy performed by him, wherein the cause of death was stated to be due to coronary thrombosis, it is stated, among others, these anatomical changes: First, thrombosis of the first descending branch of the left coronary artery; and, second, congestion of the myocardium supplied by this branch of the coronary artery. The report itself contains these pertinent expressions:
"Over the anterior wall of the left ventricle there are occasional petechial hemorrhages in the epicardium. * * Sectioning through the anterior wall of the left ventricle reveals a marked hemorrhagic appearance of the myocardium that extends laterally over the anterior half of the left ventricle wall from the base to the apex and into the interventricular septum anteriorly through approximately one-half of the interventricular septum.
"* * * The first descending branch of the left coronary artery shows a thrombus in its first cm. from its orifice with complete obliteration of its lumen and the thrombus overlies an atheromatous plaque which narrows the lumen markedly. The thrombus extends over an area measuring 9 mm. in length. Distal to the thrombus there is arteriosclerosis."
The correctness of the theory of plaintiff's experts is corroborated by Dr. Cummins' findings.
Dr. Hargrove, testifying for the defendant, taking into consideration the anatomical diagnosis that appeared on the autopsy report, stated that a coronary thrombosis was a clot formed in one of the coronary vessels conveying blood to the heart muscle, depriving such area of the heart muscle of its necessary and indispensable blood supply.
Dr. Sanders was of the opinion that in many instances of coronary thrombosis that strenuous physical labor or exercise was the precipitating cause of the creation of a coronary thrombosis; that the bleeding within the walls of the artery in the presence of an arteriosclerosed plaque might be brought about by emotional stress and excitement and that these hemorrhages may be created within the arterial walls through physical exertion and effort and emotional stress through the increase in rate of blood flow elevating the pressure within the capillaries. He was of the opinion that, in view of the evidence of this case, the exertion of Sepulvado's work precipitated the attack and that the fact of the unseasonably hot weather and the fact that Sepulvado was exposed to the sun increased the likelihood of such an attack.
Dr. Boyce stated:
"I have read the copy of the autopsy report, and it is my opinion that pulling that saw was, in this case, the exciting factor which caused the catastrophe in the coronary artery of this man; and my opinion also is, that had this man known what his attack was and been taken over immediately by a doctor, he might have been saved and if he had done that and hadn't gone back to the same work which excited the same thing again, but more severely, and took his life."
*532 The doctor was of the further opinion that all pathological conditions in coronary occlusion are influenced and aggravated by exertion and that exertion is an exciting factor in the ideology of each of those conditions. It was his opinion that the increase of the heart rate through excitement, stress and strain from two to three times its normal force or speed, in addition to the activity of the heart muscle, would, in all probability, loosen the plaque or foreign body imbedded in the artery, causing it to be extruded into the lumen or that it would be apt to cut a small artery or to rupture an abscess, built by nature around the foreign body, and that cutting of logs with a cross-cut saw would supply the exertion necessary to precipitate a coronary thrombosis in such cases.
Dr. Dienst was of the same opinion as Dr. Boyce and Dr. Sanders that the exertion of this man's work, as established by the testimony in the case, were the exciting and precipitating factors producing the coronary thrombosis from which he died.
All the physicians testifying in the case were in agreement that the proper course of procedure and treatment for the deceased after his initial attack would have been for him to have ceased work completely and to have been placed in bed for complete rest. This argues strongly against defendant's contention that the continuance of work by the deceased and the stress, strain and exercise accompanying the same were not the precipitating and direct causes of the succeeding and fatal attack.
Dr. Hargrove expressed the opinion that usually strenuous physical effort performed under the conditions decedent was laboring could be the precipitating factor in an attack of coronary thrombosis, and that the extent of the deceased's exertion and exercise in hot weather then prevailing would constitute an unusual condition, such as might in his opinion precipitate such an attack.
Under the state of facts existing in this case, and taking into account and giving full credit and consideration to all the expert testimony, the conclusion is inescapable that the death of the deceased was caused by coronary thrombosis produced, caused, precipitated and brought about by the strenuous physical exercise, exertion and strain and exposure to the unusual heat occasioned by Sepulvado in the performance of his duties of cutting and sawing logs within the course of his employment. This conclusion is supported by prior decisions of this and the other courts of appeal of this State, and of the Supreme Court.
Even so, defendant questions that the deceased sustained an accidental death within the purview of the Workmen's Compensation Act. LSA-R.S. 23:1021 defines an accident:
"`Accident' means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury. * * *
"`Injury' and `Personal injuries' includes only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. There terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted."
In the case of Jackson v. Travelers' Insurance Co., 180 La. 43, 156 So. 169, 170, the facts were that the employee was engaged in loading cross-ties from stacks along the railroad into railroad box cars. The employee's particular duty was with one other, employee to lift the ties and place them on the shoulders of other fellow employees, who would carry them into the box car. After working from 7:00 o'clock in the morning May 6, 1932, until about 10:00 o'clock, the employee and his co-worker picked up a tie and raised it about shoulder high when he dropped his end and exclaimed "I done jerked a kink in my side!'" Soon thereafter he spat up blood, later had a hemorrhage of the stomach, and the hermorrhaging continued some five or six days until he died. The Supreme Court granted writs to this court *533 on its conclusion that the employee's death was due directly to active progressive syphilis; that the ravages of the disease had so thinned the tissues of the veins in the walls of his stomach that a hemorrhage was liable to occur at any time under any conditions; that although it did occur while he was at work, it was not caused, activated or materially accelerated by any accident arising out of his employment. The Supreme Court there stated:
"It appears, therefore, that the fair preponderance of the medical testimony is to the effect that the accident caused by the heavy work hastened the death of the deceased and that the strain he underwent, due to his weakened physical condition, was the cause of the hemorrhage of the stomach that resulted fatally.
"Under this state of facts, our conclusion is that the death of the deceased was caused by an accident arising out of his employment; that the injury, added to the disease, superinduced the physical disability that ended in the death of deceased; and that relator is entitled to compensation, under the well-settled jurisprudence of this court."
In Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625, 626, Hemphill, plaintiff's husband, was employed by the defendant as a carpenter and on the day of his death he and another employee were assigned to re-roof a small house belonging to the defendant. To accomplish this work, it was necessary for them to lay, tack and tar composition paper that was carried to the roof by them up a 12 or 13 foot ladder in rolls weighing between 90 and 100 pounds. Eight of these rolls were used in all. Some thirty minutes after Hemphill took the last roll to the roof, he came down the ladder, wet with perspiration, took a drink of ice water and sat down in the shade, holding his hand over his heart, declaring to his co-workers that he had a pain in that region. He was carried to the doctor's office, treated and placed in a car and died on his way home. After observing that "Since this case does not involve an accident causing external injuries or producing objective symptoms, we must look to the testimony of the medical experts to determine whether this is one of those cases that comes within our well-settled jurisprudence that the legal requirements are present to constitute an accident and an injury is compensable where excessive heat, heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition", the court stated:
"We think the overwhelming preponderance of the evidence shows that the strain on Hemphill's heart because of the strenuousness of the work and the heated conditions under which he was working were the motivating causes of his death. This was the unqualified and unanimous conclusion of all three of the plaintiff's expert witnesses and their testimony was not in any way weakened or refuted by the defendant's medical experts. In fact, there is evidence in their testimony corroborative of the conclusion reached by plaintiff's experts, as will be disclosed by an analysis thereof. * * *
"Moreover, it is our opinion that the experts for the plaintiff were not only positive in arriving at the conclusions they did, but that the reasons given by them for such conclusions were, to a lay mind, more sound and in keeping with medical science."
In Murray v. Mengel Co., La.App., 9 So.2d 818, 821, the plaintiff, who had been employed many years by the defendant and who was 75 years of age and afflicted with arteriosclerosishardening of the arteries and high blood pressure, suffered a stroke of apoplexy or cerebral hemorrhage which caused him to become partially paralyzed on his right side and limbs. The principal question was whether or not plaintiff suffered an accident which was a contributing cause of the rupture of the cerebral artery and whether or not there was causal connection *534 between the injury and his disability. The court held:
"If the exertion and straining in working cause such an elevation in the blood pressure of a person with hardened arteries as to cause the artery to rupture and result in a hemorrhage, this is an injury to the physical structure of the body and is such an unexpected and unforeseen occurrence as to constitute an accident within the meaning of the compensation law. It is now well established in our jurisprudence that, if excessive heat, heavy lifting or straining, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition, the legal requirements are present to constitute an accident, and the injury is compensable. Wright v. Louisiana Ice & Utilities Co., 19 La. App. 173, 138 So. 450; Ozbolt v. Weber-King Mfg. Co., La.App., 193 So. 383; Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 200 So. 330."
This court stated in Dortch v. Louisiana Central Lumber Co., 30 So.2d 792, 796-797:
"It is now well settled that to constitute an accident within the meaning of the Workmen's Compensation Law in cases where the work of the claimant entails regularly heavy physical effort, it is not necessary that the injury from which disability follows be the result of unusual physical effort. If a diseased organ gives way while the laborer is performing his usual and customary heavy duties, and disability results, it is compensable. This doctrine is affirmatively established by the following cases, viz.: Jackson v. Travelers' Insurance Company, 180 La. 43, 156 So. 169; Renfrow v. Police Jury of Caddo Parish, La.App., 155 So. 291; Biggs v. Libbey-Owens-Ford Glass Company, Inc., La.App., 170 So. 273; Nickelberry v. Ritchie Grocer Company, 196 La. 1011, 200 So. 330; Hill v. J. B. Beaird Corporation, La.App., 19 So. 2d 295."
The facts were that Dortch while pulling one end of a cross-cut saw in sawing a large log, the saw began to run heavily and pinched, requiring considerable effort. While thus performing his labors a pain suddenly developed in his right shoulder downward, which was later diagnosed as spontaneous pneumothorax or collapse of the right lung. The court concluded its opinion by saying:
"In view of the very liberal construction accorded the Workmen's Compensation Law by the Supreme Court of this State, we hold that the facts of this case constitute an accident, and that having had the initial injury while he was working, plaintiff is entitled to compensation during the time of total disability."
In Lampkin v. Kent Piling Co., Inc., La. App., 34 So.2d 76, 78, Frank Lampkin, who had always enjoyed good health without any indication he was suffering from heart disease or high blood pressure prior to his death and who was only 42 years of age when he died, was stricken while employed as fireman for the defendant. His duties required the firing of two boilers with wood shavings using a large shovel for the purpose and by sawdust fed into the furnace by means of a chute. He was standing on the platform about three feet from the open door of the furnace, with the shovel in his hand, when stricken. Although it was a cold day in March, he was perspiring. The cause of his death was coronary sclerosis or a narrowing of the blood vessel supplying the heart muscle. After quoting from the Murray v. Mengel Co. case, the court stated:
"The District Judge found that the duties Lampkin was performing when stricken, and the excessive heat in the boiler room, contributed to his death or brought on the heart attack. We find no manifest error in his finding; in fact, it is our opinion that the combination of the strain, exertion and excessive heat brought on the fatal heart attack. Lampkin may have been suffering from heart disease before the *535 date of his death. If so, his dependents would nevertheless be entitled to recover compensation because the aforesaid conditions certainly aggravated his condition and accelerated his death."
In Brister v. Miller, La.App., 178 So. 284, the court concluded that the evidence showed that the deceased died of heart failure caused from the strain and overexertion in pulling a saw in cutting down a tree at a time when he was overheated and held that the heart failure that proximately caused the death of the deceased was brought on or aggravated by his strain and exertion in trying to pull the saw through the tree at a rapid rate of speed and at a time when he was overheated, and that those facts and circumstances presented a compensable case.
In the case of Calhoun v. Rayville Ice & Fuel Co., Inc., La.App., 161 So. 660, where the accidental injury consisted of a strain which occurred when plaintiff attempted to catch a timber which toppled towards him, the court held the accidental injury was produced or brought about by a condition diagnosed as coronary thrombosis, although plaintiff was already suffering from high blood pressure.
Malone's Louisiana Workmen's Compensation Law and Practice, p. 314, reviews the jurisprudence on the subject now before us, and it says:
"Trauma usually associated with any strenuous employment is often sufficient to bring about the disability or death of an employee suffering from a diseased heart or high blood pressure. Complications in proving causation arise from the fact that the natural progress of pre-existing heart infirmities can produce disability at any moment regardless of any outside influence. However, it is well established in medical science that exertion and heat characteristic of heavy physical duties can cause severe injury to a weakened heart or blood vessel. The issue of causal relation is now usually resolved into the sufficiency of alleged exertions and overheating to injure the heart or blood vessel in the specific case. Stoking a furnace, carrying ice, cooking glue, and boiler making have all been held to have aggravated the employee's pre-existing weakened condition.
"* * * Not only general heat and exertion but specific strains and blows have also been held responsible for heart and blood vessel injuries. In one interesting case a blood vessel of the worker's eye ruptured while he was lifting a heavy object. Similarly, it was found that a blow on the bank caused or aggravated the heart ailment of another employee."
The testimony of the medical experts establishes to our satisfaction that the exertion of deceased under the facts and circumstances established in this case was sufficient to and did bring about the disturbance of the plaques in deceased's circulatory system, causing them to be dislodged from their moorings and to form an obstruction or occlusion in the arteries, and that such constitutes an accident within the meaning of the Workmen's Compensation Act. That such an accident brought about, precipitated or aggravated the condition resulting in the death of plaintiff's husband.
The judgment of the lower court was in accord with the jurisprudence of this State as expressed among others in the aforesaid cases by the Courts of Appeal and the Supreme Court.
In our opinion the judgment is correct and, for the reasons assigned, it is affirmed at appellant's costs.